| 40 | 238 |
|----|-----|
| 75 | 435 |
| 40 | 238 |
| 82 | 243 |
| 40 | 238 |
| 83 | 133 |
| 40 | 238 |
| 84 | 471 |
| 40 | 238 |
| 97 | 173 |
| 40 | 238 |
| 98 | 201 |
| 40 | 238 |
| d105 | 494 |
| 105 | 499 |
| 105 | 500 |
| 105 | 502 |
| 105 | 505 |
| 105 | 506 |
| 105 | 510 |
| 105 | 519 |
| 105 | 522 |
| 105 | 523 |
| 40 | 238 |
| 112 | ²518 |

# RUTH and others vs. OBERBRUNNER and another.

WILLS: CHARITABLE TRUSTS. *(1) Charitable trusts affected by sec. 1, ch. 84, R. S. (2–7) Will held not valid to create a charitable trust.*

PROBATE COURT: JUDGMENT. *(8, 9) Effect of judgment of probate court assigning property.*

1. Sec. 1, ch. 84, R. S., abolishes *all* trusts, including those for *charitable* purposes, except such as are specifically authorized by that chapter.

2. A devise of land to A. and B., "to hold the same in trust for the use and benefit of the order of St. Dominican and St. Catharine's Female Academy — and for no other purpose — which is located in the city of Racine, in the state of Wisconsin," cannot be sustained under subd. 5, sec. 11 of said chapter; because the trust is not "fully expressed and clearly defined upon the face of the instrument."

3. The trust, being a purely *passive* one, is not authorized by the other provisions of said chapter.

4. If, when the will took effect, "the order of St. Dominican and St. Catharine's Female Academy" had been incorporated, and empowered to take and hold the legal estate in said lands, such legal estate would have vested in them under the statute. But neither of them having been incorporated at that time, nor until after the commencement of this action by the testator's heirs to recover the land, the devise was void.

5. The devise is not *expressly* in trust for a charitable use; and the *cestui que trusts* being mere voluntary associations, with power to change the objects of their existence, *quære*, whether there is any implied limitation of the trust to purposes of charity.

6. As the trusts authorized by said subdivision 5 are limited as to time, *quære* whether they are designed to include trusts for charitable uses.

7. Whether, where a devise in trust is otherwise good under the statute, an unincorporated association can take as beneficiary, is not here considered.

8. The order or judgment of a probate court of this state, distributing and assigning the estate of a decedent, is no bar to a subsequent action to recover from the assignee land so assigned, brought by one who had no notice, actual or constructive, of the application for such order. *Bresee v. Stiles*, 22 Wis., 120, as to this point, reaffirmed. And the mere giving of the statutory notice of the application for probate of the will is not sufficient to render the judgment of assignment a bar against the heir who was not before the court and had no other notice of the proceeding.

9. Whether such a judgment, regularly made, is conclusive upon parties who had due notice of the proceeding, is not here determined.

Ruth and others vs. Oberbrunner and another.

APPEAL from the Circuit Court for Racine County.

The following statement of the case is taken from the opinion of Mr. Justice COLE herein, as originally prepared:

"The action is ejectment, brought by the plaintiffs as the sole heirs-at-law of Margaretha Ginker, otherwise called M. Thomasina Ginker, under whose will the defendants claim the property. The material facts upon which the question as to the validity of the devise arises, are briefly these. Prior to the 6th day of September, 1866, M. Thomasina Ginker was a sister of the order of St. Dominican, and was possessed of the real estate in controversy, holding the title thereto in her own name. On the first of September, 1866, she made her will, describing herself in the body of the instrument as the " Superior of the order of St. Dominican;" and in which, after making provision for the payment of her debts, she gave and devised the residue of her estate, real and personal, to the defendants, who were sisters of the same order, " to hold the same in trust for the use and benefit of the order of St. Dominican and St. Catharine's Female Academy, and for no other purpose, which is located in the city of Racine in said state of Wisconsin." This is the language of the will, and contains all there is expressing the trust and defining the purposes which the testatrix designed to promote. The Rt. Rev. Bishop Henni of Milwaukee, and Gerhard Thelen of Racine, were constituted executors of the will. Neither the order of St. Dominican nor St. Catharine's Female Academy * was, at the making of the will or before the commencement of this action, incorporated, though since the suit was instituted St. Catharine's Female Academy has become an incorporated institution by that name, and the real estate has been conveyed to that corporation by the defendants."

---

* In the brief of counsel for the appellants upon their motion for a rehearing in this case, it is stated that the terms of the will above recited describe only *one* body or association of persons.—REP.

On the trial, after plaintiffs had made a *prima facie* case, the defendants offered in evidence "the papers, proceedings and record from the probate court of Racine county in the matter of the last will and testament of M. Thomasina Ginker." No irregularity in these proceedings is claimed, unless it be in the absence of any notice to the plaintiffs of the final order of the probate court assigning the estate of the deceased. It appears that, upon petition of the executors, the court made an order, October 23, 1869, fixing the 22d of November following for hearing and examining the final account of the executors, and directed notice to be given by publication of a copy of said order for three successive weeks in a newspaper; that the publication was duly made, and the account rendered; and that, on the 1st of December, 1869, the county judge made an order, first, allowing and confirming said account; secondly, reciting that it appeared that the estate of the deceased had been fully settled, and that all of the debts and expenses of administration had been fully paid, and that there remained in hands of the executors the residue of the estate, consisting of certain personal property and certain real estate there described (including that here in controversy); and thirdly, ordering, adjudging and decreeing that said personal and real property be assigned absolutely and in fee to the present defendants. This evidence was admitted against plaintiffs' objection.

The circuit court rendered judgment for the plaintiffs; and the defendants appealed.

Briefs were filed for the appellants by *Fuller & Dyer*, their attorneys, and *L. S. Dixon* of counsel; and a brief for the respondents, signed by *Van Buskirk & Ritchie*, with *Fred. Winkler* of counsel. The cause was argued orally, at the January term, 1875, by *Chas. E. Dyer* and *L. S. Dixon* for the appellants, and *S. B. Van Buskirk* and *Fred. Winkler* for respondents.

The argument of *Fuller & Dyer* for the appellants was

substantially as follows: The judgment of the county court, assigning the property to the appellants, if regularly rendered, is binding upon all the parties in interest until set aside or reversed by direct proceedings for that purpose.   R. S., ch. 103, secs. 2–5; *Jackson ex dem. Grignon v. Astor*, 1 Pin., 137; *S. C.*, 2 How. (U. S.), 340; *Kempe's Lessee v. Kennedy*, 5 Cranch, 173; *U. S. v. Arredondo*, 6 Pet., 728–9; *Thompson v. Tolmie*, 2 id., 157; *U. S. v. Nourse*, 9 id., 27; *Voorhees v. Bank of U. S.*, 10 id., 472; *Comstock v. Crawford*, 3 Wall., 403; *Jackson v. Robinson*, 4 Wend., 440; *Sitzman v. Pacquette*, 13 Wis., 291; *Baily v. Scott*, id., 620, 621; *Arnold v. Booth*, 14 id., 180; *Allie v. Schmitz*, 17 id., 172; *Reynolds v. Schmidt*, 20 id., 374, 378; *Board of Sup'rs v. R. R. Co.*, 24 id., 131; *Howe v. McGivern*, 25 id., 525; *Blodgett v. Hitt*, 29 id., 170; *Farrington v. Wilson*, id., 384; *State ex rel. Kellogg v. Gary*, 33 id., 103, 104; *Hauser v. The State*, id., 678; *McPherson v. Cunliff*, 11 Serg. & R., 426, 432; 14 id., 173; 6 Bin., 496; *Kellogg v. Johnson*, 38 Conn., 269; *Gould v. Stanton*, 17 id., 388; *Watson v. Hutto*, 27 Ala., 513; *Springer's Appeal*, 29 Pa. St., 208; *Walker v. Bradbury*, 15 Me., 207; *Bent v. Weeks*, 44 id., 45; *Danforth v. Smith*, 23 Vt., 247.   To the general doctrine of the binding force of decrees of courts of probate, having jurisdiction, and that they cannot be impeached in collateral proceedings, counsel further cited, *Sheldon v. Bush*, 1 Day, 170; 1 Conn., 467; 6 id., 388; *Gates v. Treat*, 17 id., 392 ; *Randolph v. Doss*, 3 How. (Miss.), 205; *Wheelock v. Hastings*, 4 Met., 504; *Peters v. Peters*, 8 Cush., 529, 542, 543, 545; *Loring v. Steineman*, 1 Met., 204; *Abbott v. Bradstreet*, 3 Allen, 587; *Waters v. Stickney*, 12 id., 1; *Emery v. Hildreth*, 2 Gray, 228, 231; *Whithead v. Mallory*, 4 id., 180, 184; *Crippen v. Dexter*, 13 id., 330; *Luchterhand v. Sears*, 108 Mass., 552, 553. 2. The circuit court held that the respondents had not been brought into the probate court by proper notice that a decree assigning the estate would be made, and that they were,

therefore, not bound by the judgment.    But the notice of
the application for probate of the will (R. S., ch. 97, sec.
18, and ch. 99, sec. 20) brings before the court all parties
interested in the estate, whether heirs, devisees or legatees,
and whether residents or nonresidents.    The court has then
jurisdiction to take all such proceedings as are necessary for
the probate of the will, and all the ordinary steps subse-
quently required to give the will effect, and determine the
rights and interests of the heirs, devisees and legatees in the
estate.    True, when land is to be sold, a certain notice is to
be given; and when creditors are to be barred, another notice
is to be given.    But these are independent proceedings,
usually affecting third parties, extraneous in a measure and
not inherently a part of those necessary proceedings which
are designed from first to last to result in a distribution of
the estate among those who claim by descent or devise.    Such
persons, after the notice of probate has been duly given, are
constructively before the court for the purpose of such pro-
bate and of all proceedings *necessarily* connected with it.
Hence, the statute nowhere requires notice to be given of the
application for an order or judgment assigning the estate, or
of the contemplated making of such order or judgment.
When *partition* is to be ordered, it requires notice; but even
then notice is to be given to nonresidents only when they
have agents, attorneys or guardians in the state.    R. S., ch.
103, sec. 7.    As to the jurisdiction of a probate court to
render judgments of this character without notice to persons
interested in the estate, where the statute does not require
such notice, see *Crippen v. Dexter* and *Loring v. Steineman*,
*supra*.

The argument of *Mr. Dixon* on the same side was sub-
stantially as follows:

1. The statute (R. S., ch. 103) provides for two classes of
cases, or kinds of proceeding, in the ultimate disposition of
the estates of decedents in the probate court:  (1) The pro-

ceeding assigning the residue of the estate after the payment
of debts, etc., without actual distribution or partition in that
court, but naming and determining the persons and the pro-
portions or parts to which each shall be entitled. Secs. 2–4,
15. (2) The proceeding for distribution and partition in fact.
Secs. 5–14. In the latter, notices are required to be given.
Secs. 7, 13. In the former, no notice is required save that
which must be given under sec. 17, ch. 102, of the accounting
of the executor or administrator. The assignment of the
residue takes place immediately upon such settlement, and
the discharge of the executor or administrator, and is insep-
erable from it; and it is presumed that all persons in interest
will be present or represented at such settlement and dis-
charge, and ready to accept the assignment, or object thereto.
The decrees of courts of probate, when acting within their
jurisdiction, like adjudications of prize and forfeiture and in
matters of collision in admiralty, sentences in actions of
divorce and in suits for jactitation of marriage, judgments
and orders in proceedings in insolvency and bankruptcy, and
others, are conclusive upon all persons. They are *in rem*
rather than *in personam*, and, as such, cannot be impeached
in any suit or proceeding, or by any person. [To this point
counsel cited, in addition to cases named in the foregoing
brief, Bigelow on Estoppel, 159; *Lawrence v. Englesby*, 24
Vt., 42; *Farrar v. Olmstead*, id., 123; *Steen v. Bennett*, id..
303; *Allen v. Dundas*, 3 Term, 125; *Judson v. Lake*, 3 Day,
318, 324; *Kane v. Rock River Canal Co.*, 15 Wis., 179;
*Nash v. Church*, 10 id., 303; *Archer v. Meadows*, 33 id., 172,
and cases there cited.] Probate courts are indeed limited
strictly to the powers conferred by statute, and what is merely
irregularity or error in the proceedings of other courts be-
comes with them, in very many cases, defect of jurisdiction.
This principle will explain much, if not all, of the apparent
discrepancy in the reported cases as to the conclusiveness of
their decrees. But the judgment of assignment here in ques-

tion was pronounced in pursuance of the very letter of the, authority conferred by the statute. 2. The devise here is to charitable uses, and is valid. The trustees are natural persons, capable of taking and holding; and the *cestui que trusts* or beneficiaries are a well ascertained body or society of individuals whose rights as such are and will ever remain the proper subjects of easy and accurate judicial inquiry and determination. The existence of "the order of St. Dominican and St. Catharine's Female Academy," of the city of Racine, is a matter of general notoriety, so spoken of in the will, and so appearing from the evidence. *King v. Parker*, 9 Cush., 71, 82; Perry on Trusts, §§ 698–705, 732. (1) This is then such a charitable use and trust as even the courts of New York, notwithstanding the statute of uses and trusts of that state, have sustained and executed, and will sustain and execute, unless the doctrine of the earlier decisions of the court of appeals is to be looked upon as overruled by a single decision of very recent date. *McCartee v. Orphan Society*, 9 Cow., 437 (1827); *Kniskern v. The Lutheran Churches*, 1 Sandf. Ch., 439 (1844); *Shotwell v. Mott*, 2 id., 46 (1844); *Williams v. Williams*, 8 N. Y., 525 (1853); *Owens v. The Missionary Society*, 14 id., 380, 408, 412 (1856); *Beekman v. Bonsor*, 23 id., 298, 308–310 (1861); *In re N. Y. Prot. Ep. Schools*, 31 id., 574, 589 (1864); *Burrill v. Boardman*, 43 id., 254, 263 (1871). See also *White v. Howard*, 46 id., 144, and *Sherwood v. American Bible Society*, 1 Keyes, 561. Counsel then examined the cases in New York which had been or might be relied upon on the other side, and contended that the only one of these in which the doctrine of the earlier decisions can be said to have been overruled, or in which it was possible to have overruled or decided it, is *Holmes v. Mead*, 52 N. Y., 332 (1873). None of the others in the court of appeals involved, in any legitimate or proper sense, the general question of the validity of such gifts to charity, but each of them

was decided upon grounds entirely consistent with the rule laid down in *Williams v. Williams*, and recognized and affirmed in the cases following it. The latter case, rejecting the *cy pres* doctrine of the English chancery in cases where there is no designated donee of the estate, and no definite scheme or purpose indicated by the donor, held only that a charitable gift, definite both as to its subject and purpose, made to a definite trustee in whom the fund or property vests presently and directly from the donor, without suspension of the title or its being dependent upon any contingency or condition which may not ever happen or be fulfilled, or not within two lives in being at the time of the gift, the trustee being at once to receive the fund or property and apply it in the manner specified, is valid. It held, furthermore, that conveyances, devises and bequests for charitable uses, such uses or the beneficiaries intended being definite or ascertainable within the law of charities, will be supported in equity, although they may be defective for want of a grantee or donee capable of taking. In such cases, the estate and use being present ones, and not contingent nor in violation of the law against suspending the power of alienation, the charity will not fail for want of a trustee; but equity will appoint one, and see that the fund is administered according to the intention of the donor. Counsel then contended that *Leonard v. Burr*, 18 N. Y., 96 (decided in 1858), is quite foreign to this question; that in *Phelps v. Pond*, 23 id., 69 (1861), the bequest was held void as depending on a contingency which might never happen; that in *Downing v. Marshall*, 23 N. Y., 366 (1861), the discussion in respect to the effect of the statute of uses and trusts related solely to private uses and trusts, and not to those of a public or charitable nature; that the bequest and devise to the Home Missionary Society was held void because the society was unincorporated, and therefore without legal capacity to take the gift, and there was no competent trustee to take the fund, so as to secure its appropriation to the pur-

pose intended (p. 382); that in *Levy v. Levy*, 33 N. Y., 97 (1865), and *Bascom v. Albertson*, 34 id., 584 (1866), the bequests were held void on the ground that the use was contingent for a period not allowed by the law against perpetuities, and all that is said in the opinions relative to the doctrine of *Williams v. Williams*, is purely *obiter;* and that *Rose v. The Rose Benevolent Association* (unreported except as found in the opinion of WRIGHT, J., 33 N. Y., 128), turned upon the same proposition as the two cases last mentioned. (2) One ground on which it has been contended in New York that the law of charities never existed in that state, is, that the statute 43 Elizabeth was the sole foundation of that law as administered by the English court of chancery, and that when that statute was repealed in 1788, the law was swept away. The better supported and prevailing opinion now is, that the law of charities did not have its origin in that statute, but existed long before as the common law of England. Some of the leading American authorities in which this question is elaborately discussed, are *Vidal v. Girard's Ex'rs*, 2 How. (U. S.), 127, 193–6; *Jackson v. Phillips*, 14 Allen, 539, 552–4; *Baptist Association v. Hart's Ex'rs*, 4 Wheat., 1; Perry on Trusts, §§ 639, 694, and cases cited. But however that question may be determined, the statute, by declaring the validity of certain specific charities, brought those so legalized within the ordinary jurisdiction of courts of equity in the enforcement of valid trusts. That statute, enacted in 1601, so far as applicable to our situation and circumstances, and so far as the charities therein legalized can be administered in the ordinary course of proceedings in equity, came to us as a part of our common law. *Coburn v. Harvey*, 18 Wis., 147; *Kellogg v. Railway Co.*, 26 id., 272; *Spaulding v. Railway Co.*, 30 id., 110. The same statute, or the general principles established by it, have been held to have been introduced and to be in force in at least twenty states. In Virginia, as in New York and perhaps one or two other states, the statute was re-

pealed at an early date. Perry, 698, note. In this state it has never been repealed, and the principles established by it are still in force, unless modified by the statute of uses and trusts. (3) Those principle are not abrogated by the New York statute of uses and trusts, as is shown by the masterly reasoning of Judge Denio in *Williams v. Williams.* Our statute of uses and trusts (R. S., ch. 84, sec. 11; Tay. Stats., 1129, § 11) has a fifth subdivision not found in the New York statute, authorizing a trust to be created "for the beneficial interest of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time prescribed by this title." This clause indicates a policy in this state upon the subject of active trusts, entirely different from that which prevails in New York, and shows that no active trusts were intended to be affected or abolished by any provision of the statute. *White v. Fitzgerald,* 19 Wis., 487; *Goodrich v. Milwaukee,* 24 id., 422. At least it shows that the legislature of this state designed to let in and establish every active trust which had theretofore been lawful, not excluding trusts for charity. (4) The statute, modified as we find it, was adopted in this state in 1848. It had then received a judicial construction in New York. The opinions of the assistant vicechancellor in two cases in Sandford decided in 1844, were the only judgments pronounced prior to our adoption of the statute. They were received as the law of the state, and were never judicially questioned until 1850; and they have since been confirmed by the most carefully considered decision of the court of last resort, and the rule of that decision has been the established judicial construction of the statute for twenty years. With such judicial construction, so previously given, and so subsequently ratified and confirmed, the statute was adopted here; and by that construction this court is bound. And by that construction, charitable uses and trusts are excluded entirely from the statute. (5) But if charitable

uses and trusts are included in sec. 1 of our statute, which abolishes uses and trusts except as authorized and modified in that chapter, they are also included in subd. 5, sec. 11, and, if plainly expressed and clearly defined as therein specified, they are valid for two lives in being at the time of the creation of such trusts, and will then expire according to the limit of the statute against perpetuities. The devise here is then good as a devise in trust for the lives of the devisees, or the longest liver of them. And in applying this subdivision to charities, that is to be regarded as a "trust fully expressed and clearly defined on the face of the instrument creating it," which would have been so regarded by the former law. The trust here is so expressed and defined, within the adjudications on that subject. It is also an *active* trust; the words "to hold" signifying here "to see to, to take care of, to apply" for the use and benefit of the beneficiaries named. Nor does the devise violate the law of perpetuities. The language employed is entirely consistent with the purpose of creating a lawful trust, that is, one limited by the lives of the two trustees, or that one of them who should live longest; and the court is bound to give it that construction which will uphold the will, and best effectuate the intent of the testator. *Whicker v. Hume*, 7 H. L. Cas., 154; *Saltonstall v. Sanders*, 11 Allen, 446, 455; *DeKay v. Irving*, 5 Denio, 646; Perry on Trusts, §§ 709, 728. To the point that there was here a sufficient specification or designation of two lives, counsel further cited *Hawley v. James*, 16 Wend., 61, 64, 127–134, 171–2; *Tucker v. Bishop*, 16 N. Y., 402, 406.

Counsel further insisted that the burden is upon the parties attacking the will to show that the beneficiaries, or objects of the trust, are uncertain, so as to make the trust incapable of execution. The will discloses no such uncertainty on its face; and the presumption of validity can be indulged.

*Van Buskirk & Ritchie*, with *Fred. Winkler* of counsel, for respondents:

I. The defendants took no title under the will. 1. The devise was not good under subd. 3, sec. 11, ch. 84, R. S. (1) This was a mere passive trust, without any authority given to the trustees to receive the rents and profits and apply them to the use of any person during the life of such person, or to convey, or do anything whatever in connection with, the estate. No title, therefore, vested in the trustees under said subd. 3. The words "to hold the same for the use of," etc., do not create an active trust. *Boynton v. Hoyt*, 1 Denio, 57; *Riehl v. Bingenheimer*, 28 Wis., 86; *Goodrich v. Milwaukee*, 24 id., 422; *Coster v. Lorrillard*, 14 Wend., 265; *Jefferson v. Morton*, 2 Saund., 6, note 17. (2) The devise suspends the power of alienation in violation of the provisions of the statute against perpetuities, not being expressly limited upon two lives in being. R. S., ch. 83, sec. 15; *Hawley v. James*, 16 Wend., 61, 123; *Yates v. Yates*, 9 Barb., 325, 344; *Boynton v. Hoyt, supra; Phelps v. Pond*, 23 N. Y., 79; *Beekman v. Bonsor*, id., 315, 316; *Schettler v. Smith*, 41 id., 334–5. 2. The devise is not good under subd. 5 of said sec. 11. (1) That subdivision, like the others, contemplates only active trusts. *Goodrich v. Milwaukee*, 24 Wis., 430; *Marvin v. Titsworth*, 10 id., 329. (2) Trusts under that subdivision also are, by its terms, subject to the statute against perpetuities. 3. To uphold a trust there must not only be a trustee, but a beneficiary capable of taking under the will. An unincorporated, voluntary association cannot take a legacy, and therefore cannot take by devise. Co. Litt., 95 a; Shep. Touch., 235; *Jackson v. Cory*, 8 Johns., 385; *Hornbeck v. Westbrook*, 9 id., 73; *Baptist Association v. Hart's Ex'rs*, 4 Wheat., 1; *Owens v. The Miss. Soc.*, 4 Kern., 385; *Downing v. Marshall*, 23 N. Y., 384; *Sherwood v. Am. Bib. Soc.*, 1 Keyes, 566; *Williams v. Williams*, 4 Seld., 540; *Levy v. Levy*, 33 N. Y., 101; *Bascom v. Albertson*, 34 id., 588; *White v. Howard*, 46 id., 162–3; *Jarvis v. Babcock*, 5 Barb., 139; *In re De Kay*, 4 Paige, 402; *Johnson v. Fleet*, 14

Wend., 180; *Welch v. Allen*, 21 id., 147; *Grimes v. Harmon*, 35 Ind., 198. The reason is, that such a devise is to an unascertained and unascertainable beneficiary. There is, in such a case, no designated person who could come into court and claim the benefit of the devise, and it is therefore void for uncertainty. *White v. Fisk*, 22 Conn., 31; *Fontain v. Ravenel*, 17 How., 368; *Beekman v. Bonsor*, 23 N. Y., 314, 318; *Le Page v. McNamara*, 5 Iowa, 124; *Gallego's Ex'rs v. Attorney General*, 3 Leigh, 450; *Barker v. Wood*, 9 Mass., 419; *Trippe v. Frazier*, 4 Harr. & J., 446; *Wilderman v. City of Baltimore*, 8 Md., 551; *Morse v. Carpenter*, 19 Vt., 613; *McCord v. Ochiltree*, 8 Blackf., 15; *Dashiell v. Attorney General*, 5 Harr. & J., 390; *Grimes' Ex'r v. Harmon*, 35 Ind., 198 (9 Am. R., 690). The subsequent incorporation of the St. Catharine's Academy did not affect rights existing when this suit was commenced. *White v. Howard*, 46 N. Y., 167; *Owens v. The Miss. Soc.*, 14 id., 380, and cases there cited. 4. It may be claimed that though the devise may be void at law, yet a court of equity will uphold it as a charitable use. It is now well settled, however, at least in New York and some of the other states, that equity will not sustain such a use as that here attempted to be created, but that all such trusts and uses are abolished by the statute. *Bascom v. Albertson*, 34 N. Y., 587, and cases there cited; *Holmes v. Mead*, 52 id., 335, and cases cited; *Grimes v. Harmon*, 35 Ind., 198, and cases cited. The laws of this state and those of New York are substantially alike upon the question of charitable uses. 1 R. S. of N. Y., 727, 728, secs. 45, 55; Laws of N. Y. 1788, ch. 46, sec. 37; R. S. of Wis. 1858, ch. 84; Terr. Stat. Wis. 1839, p. 407, § 8.

II. Plaintiffs' right of recovery cannot be defeated by virtue of the order of the county judge assigning the premises in fee to the defendants. Upon the death of M. Thomasina Ginker without having lawfully devised the premises, the title vested in plaintiffs as her heirs, and they had a right to sell and con-

vey the premises, and could have given a good title except as to creditors, or could have maintained ejectment against anybody but the executor. *Masterson v. Girard's Heirs*, 10 Ala., 60; *Streeter v. Paton*, 7 Mich., 341; *Marvin v. Schilling*, 12 id., 356; *Campau v. Campau*, 19 id., 116; *Jones v. Billstein*, 28 Wis., 221. At least, after proving the will and filing it, with the probate thereof, in the register's office, their title would have been perfect of record, and they could have maintained ejectment against any one but the executor or some one claiming under him. And after the estate had been settled, without sale of any part of the premises to satisfy debts of the testator, they could have maintained ejectment against the executor without any order of the county court assigning the property. Tyler on Ejectm., 490; 3 Phill. Ev., 603; 2 Greenl. Ev., § 310; *Markwell v. Thorn*, 28 Wis., 548. Such order of the county court, when made, if not set aside by a direct proceeding for that purpose, may indeed be conclusive upon some persons and for some purposes; but it is not conclusive for all purposes and upon all persons. The object of the statute (ch. 103, R. S.) is to provide means by which the executor or administrator may settle an estate and pay over or distribute any balance in his hands, and be discharged as to those who have actual title to the property distributed but are not before the court. True, sec. 4 provides that persons to whom parts of the estate have been assigned, " shall have the right to *demand and recover* their respective shares from the executor or administrator, *or any person having the same.*" But this right is one against the executor or any one in privity with him, and not against persons who claim by title paramount against the executor as well as against the applicant. What the court is to assign is property which the executor has in his possession or under his control. As to real property, the executor gets only the right to the possession for the payment of debts; the heir gets the title. In a case like this, where the executor has never taken

possession of the real estate, it would be absurd to suppose that the court is to make an order of assignment, giving a party a right of action against the executor for such real estate, over which he never had any control.    There could be no breach of his bond or duty if he failed to comply with the order in such a case.   R. S., ch. 103, sec. 3; ch. 104, secs. 2, 3, 5; *McLaughlin v. McLaughlin*, 4 Ohio St., 510.   We insist that where it appears that there are no claims which are a charge on the estate, all that can be given to the party in whose favor the order is made, is just-what the executor has; that such party acquires by the order merely a right to recover the possession of the real estate against the executor, though the order may be conclusive, also, as to the shares of those before the court asking for the order, as among themselves (*Gillett v. Treganza*, 13 Wis., 472); that as against the real owner or heir such party can no more defend than could the executor; that the order here is conclusive only upon the parties then before the court; that in a proceeding for distribution, heirs, devisees and everybody having an interest in the estate must be made parties (*Cargile v. Harrison*, 9 B. Mon., 518); that the county court makes assignment, as in the case of dower, upon the assumption that the proper parties are before the court, but any person claiming the estate by paramount title, particularly if it is real estate, can put the claimant under the order to his ejectment, and can contest his right as in the case of widows suing for dower.   *In the matter of Martha Watkins*, 9 Johns., 245; *Jackson v. Hixon*, 17 id., 125; *Jackson ex dem. Clark v. Randall*, 5 Cow., 169; *Hyde v. Hyde*, 4 Wend., 632.   And we deny that the probate court has authority, upon the application for distribution, to litigate a question of title to the real estate not in the possession of the executor, when there are adversary claimants. *Holloman v. Holloman*, 5 Sm. & M., 559; *F. & M. Bank v. Tappan*, id., 112; *McLaughlin v. McLaughlin, supra; Small v. Small*, 4 Me., 220; *Parker v. Parker*, 11 Cush.,

531. It would be strange if the legislature had so cautiously saved to the heir, and others claiming title to real estate, the right to litigate their claims in a court of general and common law jurisdiction, as to prohibit the county court from assigning dower, a mere possessory right (R. S., ch. 89, sec. 8), and at the same time had given the county court the power, by a general sweeping order (and without providing for notice of any kind), to transfer the absolute title from the heir to an individual having no lawful claim to it. It is claimed that this is a proceeding *in rem*, and that publication of notice of the application for probate of the will is notice to all the world of that and all subsequent proceedings in the case. But probate of the will does not act upon the estate to transfer it; it is the will itself which does that. The probate and the proceedings anterior thereto, as they do not act upon the estate but merely upon the will, are proceedings *in rem* as to the will, but not as to the estate. If the notice which precedes probate is notice of all succeeding steps in the settlement of the estate, why does the statute require notice to the heir of an application for the sale of real estate to pay the debts (R. S., ch. 94, secs. 3, 4, 8); and why is notice required to creditors to present their claims for settlement or that they will be barred? Clearly the reason is, that the first notice does not act upon the estate. Most of those actions that are called actions *in rem*, partake of the nature of proceedings *in rem*, and also of personal actions. Cooley's Con. Lim., § 430; *Galpin v. Page*, Am. Law Times, Dec., 1874. In proceedings of this kind some notice must be given to all parties interested, though, where the property is taken into the custody of the court at the outset, the seizure is considered to impart notice of the proceeding to the owner, and the law is less strict in giving further notice. Where the property is not thus at the outset taken into custody of the court, there is no constructive notice, and the same notice must be given the defendant as in actions where a personal judgment for damages is alone sought.

*Galpin v. Page, supra.* Counsel further argued that in the present case the court did not take the property into custody, either at the outset or at any other time; and that the present plaintiffs had no notice of the order or judgment of assignment, which was therefore not conclusive against them; and that such effect could not be given it without a violation of the constitutional rule that no man shall be deprived of his property without due process of law. *Westervelt v. Gregg,* 2 Kern., 212; *Taylor v. Porter,* 4 Hill, 140; 2 Kent's Com. (11th ed.), 13 and notes.

Cole, J. The learned counsel for the defendants insist that the judgment of the circuit court awarding the property described in the complaint to the plaintiffs, is erroneous on two grounds: First, because the devise made by M. Thomasina Ginker in her will was for a charitable use or purpose, and was valid by the laws of this state; and second, because the judgment of the probate court giving a construction to the will and assigning the real estate absolutely in fee simple to the defendants, to be owned and held by them in common, share and share alike, is conclusive on the plaintiffs, and all other persons having or claiming any interest in the estate of the testatrix at the time that judgment was rendered.

The first inquiry then is, Can this devise be sustained under the laws of this state? The question is new in this state; is of vital importance as affecting the law of charitable uses and trusts; and is surrounded with great difficulty, in whatever aspect it is considered. On the part of the defendants it is claimed and insisted, that the devise is to a charitable use or purpose, and is legal and valid. In support of this view it is forcibly argued, that the devise is to trustees who are natural persons capable of taking and holding the estate for the benefit of the beneficiaries named; that the trust is so expressed and defined that it can be enforced by a court without resort to the *cy pres* doctrine exercised by the English court of chan-

cery, or without invoking the aid of any prerogative power or jurisdiction except such as is of a purely judicial nature. The *cestui que trusts* or beneficiaries, it is said, are a well ascertained body or society of individuals, whose rights as such are and will ever remain a proper subject of easy and accurate judicial inquiry and determination — the existence of the order of St. Dominican and St. Catharine's Female Academy of the city of Racine being a matter of general notoriety, so spoken of in the will of the testatrix, and so appearing from the evidence in the cause. The devise, therefore, is not like an undefined gift to charity where there is no trustee, nor any designated *cestui que trust*, which the courts in this country, and especially the courts of New York, have refused to uphold and execute. But it is precisely such a charitable use and trust as the courts of that state, notwithstanding the statute of uses and trusts, have sustained and enforced, and will continue to protect and enforce, unless the doctrine of the earlier decisions of the court of appeals relating to charitable uses is to be looked upon as overruled by a decision of very recent date. Some high and most respectable adjudications in New York are cited by counsel in support of this position; but it must be admitted that the decisions and reasoning of judges of much eminence, in other cases in that state, have raised grave doubts as to the accuracy of the earlier decisions. The question, too, has been somewhat embarrassed by the different views entertained in regard to the origin of equity jurisdiction over charities; some holding that it was almost entirely founded on the statute of 43 Eliz., while others claim that this statute " was not introductory of any new principles, but was only a new and less dilatory and expensive method of establishing charitable donations, which were understood to be valid by the laws antecedently in force." DENIO, J., in *Williams v. Williams*, 8 N. Y., 525–542. Mr. Spence, in his work on Equitable Jurisdiction (vol. 1, p. 587), while speaking on this subject, observes that " where gifts of personal estate

were made by act *inter vivos*, to persons capable of taking, for definite charitable purposes or uses, and where lands, or the use of lands, were by deed or will directed to be applied for the like purposes, the court of chancery, apparently under its general power to enforce the performance of trusts, entertained jurisdiction of trusts of this description equally as of private trusts. Where there was no trustee, or where there was a trustee and the trust was indefinite, as for the poor generally, if applications to the court of chancery were ever made and sustained, as some high authorities have maintained, it must have been at the instance of some person on behalf of the king as *parens patriæ;* but there is no memorial, at least amongst the records that have yet been published, or to be discovered from the searches that have been made in the repertories of the court, of any information on behalf of the crown to the court of chancery for such a purpose before the time of Elizabeth." He closes his remarks by saying: "There was nothing to exclude the court of chancery from exercising its authority under its general jurisdiction for compelling trustees properly constituted to apply the rents and profits of charity estates according to the trust reposed in them. It seems, however, that no bill could have been sustained to establish a charity which was *void at law* for want of sufficient devisee, prior to the statute 43 Eliz."

We have alluded to this question because it was so ably discussed in the argument of this and another cause before us for decision, though the view which we have taken of the case renders it unnecessary to consider whether the law of charities had its origin in that statute or not. But were it otherwise, we could not possibly add anything to a discussion which has already been exhausted on both sides, and in which some of the greatest lawyers and judges have been engaged. 2 Story's Eq. Jur., ch. 32; 2 Kent, 363 et seq.; *Vidal et al. v. Girard's Ex'rs*, 2 How. (U. S.), 127; *Fontain v. Ravenel*, 17 id., 369; *Williams v. Williams, supra; Owens v. Missionary Society,*

14 N. Y., 380; *Beekman v. Bonsor*, 23 id., 298, 575; *Levy et al. v. Levy et al.*, 33 id., 97; *Bascom v. Albertson*, 34 id., 584; *Holmes et al. v. Mead*, 52 id., 332. It may be admitted that this devise would be sustained in England, and by some courts in this country where the doctrine of *cy pres* prevails. But the concession does not obviate or remove the serious objections taken to it under our statutes. By sec. 1, ch. 84, R. S., it is enacted "that uses and trusts, except as authorized and modified in this chapter, are abolished; and every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided in this title." By the next two sections, every estate held as a use was confirmed as a legal estate, and any person who, by virtue of any grant or devise, was entitled to the actual possession of lands and the receipt of the rents and profits thereof in law or equity, must be deemed to have a legal estate therein of the same quality and duration and subject to the same conditions as his beneficial interest. And section 5 provides that every disposition of lands, whether by deed or devise, shall be directly to the person in whom the right to the possession and the profits shall be intended to be vested, and not to any other to the use of or in trust for such person, and if made to one person for the use of another, except as otherwise provided in the chapter, no estate or interest, legal or equitable, shall vest in the trustee.

The language in the first section is sufficiently comprehensive and explicit to embrace all uses and trusts in lands; and the question is, Does it not include charitable uses and trusts in lands? If so, no charitable use or trust is valid which does not come within the statutory requirements. Whether the case before us conforms to these requirements, will be subsequently considered. The inquiry now is, whether there is any ground, in view of the well settled rules of construction, for introducing an exception in the statute, and for holding that it does not include charitable uses and trusts in

lands. "Uses and trusts, except as authorized and modified in this chapter, are abolished." These are the words the legislature has used in enacting the law. They are plain, broad and explicit. They apply to all trusts and uses. What right has the court to restrict the application of the language; to narrow its meaning, and say that charitable trusts and uses are not included ? It is a cardinal rule in the interpretation of a statute, to ascertain the intention of the legislature which enacted it. This intent is to be inferred from the language used. And when the legislature declares that uses and trusts, except as authorized and modified by the statute, are abolished, it must be assumed that the legislature meant what it plainly expressed; and consequently courts have no right to introduce an exception. Courts have nothing to do with the policy of the statute. Even if meritorious trusts fail because the instruments attempting to create them are defective for not complying with statutory provisions, this cannot change the rule of construction. The legislature has spoken; it has used words which include public and charitable trusts and uses, as well as private trusts; and the intent of the legislature must prevail. The statute was evidently an attempt on the part of the legislature to revise and codify the law of uses and trusts; including, it would seem, within clearly prescribed regulations, charitable uses as well as other trusts, in order that a complete system might exist, " adapted to the condition of our people and the nature of our institutions." We must therefore hold that all trusts, except those specifically authorized and saved by the subsequent provisions of chapter 84, are abolished by the first section. This result fully accords with the rule recognized by this court, that a statute which revises the subject matter of a former statute works a repeal thereof, without express words to that effect. *Lewis, Gov., v. Stout et al.*, 22 Wis., 234.

Our statute of uses and trusts is mainly copied from the statute of New York on the same subject. A great diversity

of opinion has prevailed in the courts of that state on the question whether charitable uses were included in its provisions. In *Potter v. Chapin*, 6 Paige, 640–650, decided in 1837, there is a strong intimation by the chancellor that under the revised statutes a devise of real estate could only be made to a person capable of holding the same for the purposes of the charity, and that "all general trusts are abolished." It was not necessary, however, in that case to decide the question. In *Shotwell, Executor, etc., v. Mott et al.*, 2 Sandf. Ch., 46, decided in 1844, Vice-Chancellor SANDFORD held that the article of uses and trusts only related to private trusts, and that public trusts and charitable uses were excepted from its provisions. One consideration which seems to have had influence on the mind of the vice-chancellor and led him to this conclusion, was the fact that the revisers, in their notes accompanying the article when it was submitted to the legislature, did not say one word upon the subject of charitable uses. Had the revisers proposed sweeping and radical changes in the existing law of uses and trusts, the vice-chancellor thought they would have stated their reasons and objects fully and elaborately. This suggestion or argument is considered and quite effectually disposed of by Mr. Justice DUER (himself one of the revisers, as is well known), in the case of *Ayres v. The Methodist Church*, 3 Sandf. S. C., 351–372, decided in 1849, in the following remarks: "The article in relation to uses and trusts commences with this declaration: 'Uses and trusts, except as authorized and modified in this article, are abolished' (1 R. S., 727, § 45); and the addition of a note telling the legislature that all uses and trusts not excepted were meant to be included, would have been an idle repetition of the text, which, if words have a meaning, could bear no other interpretation. Not only are uses and trusts abolished, but, to exclude the supposition that any previously existing were meant to be preserved, it is declared that none are to be excepted but those which the article itself authorizes and

modifies; and that, by any comment upon such a text, the meaning of the revisers and the duty of judges could have been rendered more plain and evident, we exceedingly doubt. * * Comparing their notes with the actual provisions in their text, the just inference seems to be, that they believed that charitable uses, as they then existed, were subject to the general rules of the common law, and consequently would be subject to the statutory rules which they desired to substitute." But the history of the judicial controversy which has raged around this question in the courts of New York, cannot be more clearly shown than by quoting a rather lengthy passage from the opinion of ALLEN, J., in *Holmes v. Mead,* where it is thus stated:

" The question," says the learned judge, " long controverted and the subject of frequent discussions in the courts of this state, and which has exercised the best minds upon the bench and at the bar, whether the law of charitable uses, as it existed in England at the time of the revolution, and the jurisdiction of the court of chancery over the subject, became, upon the adoption of the constitution of 1777, and still continues to be, the law of this state, notwithstanding our statute of ' Uses and Trusts ' and our laws against perpetuities, is directly presented by this appeal.

" All the learning upon this branch of the law, as well as the reasons which have led learned and astute judges to different conclusions, appear in the reported decisions of the courts of this state, commencing in 1844 with *Shotwell v. Mott* (2 Sandf. Ch., 46), in which Vice-Chancellor SANDFORD held in favor of the doctrine that the revised statutes relative to uses and trusts do not apply to charitable uses, and upon the same review of the history of the law in England and of the statute of 43 Eliz., as affecting the jurisdiction of the court of chancery over such uses, and for the same reasons which have since led other judges to the same results. The germ of the whole discussion is found in *Shotwell v. Mott,* and the views

of the vice-chancellor were followed and sustained by great research, and an able argument of the late Judge DENIO, who may be said to be the leading champion of this doctrine, in *Williams v. Williams* (4 Seld., 525). All that can be profitably said or suggested in favor of the existence of the law of charitable uses in this state, is well and forcibly said by the two judges named. The doctrine has never been accepted by the profession and the courts as the recognized law, but has been vigorously opposed, and its opponents have never lost an opportunity of resisting its incorporation into the body of the law, as settled by the adjudications of the courts.

"Three of the eight judges who participated in the decision of *Williams v. Williams*, dissented from the judgment. The intimation of the chancellor in *Potter v. Chapin* (6 Paige, 639) is against the validity of a trust of real estate except as authorized by the revised statutes, by which, he says, ' all general trusts are abolished.' No decision of this court since *Williams v. Williams* has sanctioned the principles of that case, as applied to charitable uses; but, on the contrary, it has been in terms disaffirmed and overruled, and the weight as well as the current of authority is now the other way, and to the effect that there can be no trusts of realty except such as are permitted by the revised statutes (1 R. S., 727, § 45; id., 728, § 55). The cases in this court, as well as in other courts, are well and ably considered by Judge PORTER in *Bascom v. Albertson* (34 N. Y., 584), and the whole question as to the law in this state in respect to charitable uses thoroughly examined. In that opinion and the cases referred to by the learned judge, it is very satisfactorily demonstrated that the system of charitable uses, as recognized in England, has no existence in this state; that the courts cannot establish or sustain a trust or use which is not within our statute of uses and trusts; in other words, that the statute relative to uses and trusts is general, and contains no saving clause in favor of charities. It would be a work of supererogation to go over

the ground again at this time.    The opinion of Judge PORTER was adopted by seven of the eight judges of the court; and we recognize the case as a correct exposition of the law in this respect, and that they are not saved by implication.    It is proper to state that the reporter misapprehended the intimation of the chief judge in *Burrill v. Boardman* (43 N. Y., 263).    It was only intended to say that, in the view of the court, the question of charitable uses, which had been argued at great length by the counsel, was not in that case.    It was not intended to intimate that it was an open question."

Thus it will be seen that the later, and, as it seems to us, the better doctrine of the court of appeals is, that "the sweeping provisions of the revised statutes, abolishing all uses and trusts except those specially named, are sufficiently general and comprehensive to include all charities, and, if these are saved, it must be by some exception expressed in or implied from the terms of the statute itself."    If the statute before its enactment here had received a construction in New York by the court of last resort to the effect that it did not apply to charitable uses and trusts, there would be good grounds for holding that it was adopted by the legislature with such construction.    But such was not the case.    The decision in the Shotwell case was by the assistant vice-chancellor, and, though confessedly able and learned, is not binding as authority.    It is entitled to the same respect and consideration as a decision of a circuit judge of equal learning and ability, and no more. The legislature of this state, in subsequently enacting the statute of uses and trusts, would probably attach no more weight to it than to the previous intimation of the chancellor in *Potter v. Chapin*, already referred to.    Certainly it is impossible, in view of this diversity of sentiment among the judges prior to 1849, as to the effect of the statute, to say that it had an established judicial construction in New York when it was adopted here.

The express trusts retained by the New York statute are

four in number, and are active trusts for special, temporary purposes in the interests of individuals. *Downing v. Marshall*, 23 N. Y., 336; *Holmes v. Mead*, *supra*. Our statute contains a provision in regard to that class of trusts, not found in the statutes of that state. It is the 5th subdivision of section 11, and reads as follows: "An express trust may be created for the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined on the face of the instrument creating it, subject to the limitations as to time prescribed in this title." It is attempted to sustain the devise under this provision; and it is apparent that if it can be upheld at all, it must be because it falls within or conforms to the requirements of this subdivision. Assuming, then, for the purposes of the case, that a trust to a charity may be created under the provision, it can only be so created upon the prescribed terms and limitations. And what are those conditions? The statute gives a distinct answer to the question. A trust for the beneficial interest of another is valid, "*when it is fully expressed and clearly defined upon the face of the instrument creating it*," and so limited as to time as not to violate the statute against perpetuities. Does the devise in the present case fulfill or answer these requirements? The real estate is devised to *M. Cecilia Fox* and *M. Hyacintha Oberbrunner*, "to hold the same in trust for the use and benefit of the order of St. Dominican and St. Catharine's Female Academy." The trust is wanting in all the elements of certainty and precision essential to give it validity. The words used are general and indefinite in their meaning. The trustees are to hold the legal title "for the use and benefit" of the beneficiaries, two unincorporated institutions or associations of individuals. No active duty is imposed upon the trustees in respect to the management, disposition or use of the property. No provision that the trustees should take possession of the property, receive the rents and profits, and apply them to any specified

purpose. Instead of the trust being "*fully expressed and clearly defined,*" there is a fatal uncertainty about it in every particular. The trust not only fails to impose any active duty upon the trustees, but it fails to designate any special purpose to which the income of the property is to be applied. The property is to be held for the use and benefit of the *cestui que trusts*. It need not necessarily be devoted to a charitable use. Suppose the profits of the real estate should be applied to the payment of taxes, to the erection or repair of buildings upon it, or to any purpose which would promote the pecuniary interests of these unincorporated associations: would this be a violation of the trust? Apply another test. Suppose a bill were filed to compel the trustees to execute the trust: what could the court order the trustees to do? Would it not be compelled to resort to the *cy pres* doctrine, establish a trust or frame a scheme to carry out the charitable intent of the testatrix, where she had given no directions, and had declared in the will no charitable purpose? It seems to us this course would be inevitable. The title of the trustees under the will is merely nominal, connected with no power or duty in respect to the management or disposition of the estate, and is unlike the trust created in *Goodrich v. The City of Milwaukee*, 24 Wis., 422. There an active duty was imposed upon the trustee, who was clothed with the legal title. He had power to sell and convey; to lease and demise; to mortgage the real estate, and apply all moneys arising from the property according to the directions of the *cestui que trust*. That was held to be good as an active trust. But here a mere passive trust is created; one which requires the performance of no duty by the trustees to carry out the trust; where there is not a word to indicate that the property is to be applied to a charitable use. If the order of St. Dominican and St. Catharine's Female Academy were incorporated, and authorized to take and hold the legal estate, it would have vested in them under the provisions of the statute. At all

events, there is no possible ground for saying that this trust, whether passive or active, is fully expressed and clearly defined in the will; and this was essential to impart to it validity. The testatrix indicates no specific purpose, no charitable object, to which the profits of the estate should be applied. In the case of *Owens v. The Missionary Society, supra,* there was a bequest " to the Methodist General American Missionary Society appointed to preach the gospel to the poor, L. C.," a voluntary association then existing. One question considered in the case was, whether the bequest was accompanied by a trust, so that if the society obtained the fund it would be bound to appropriate it to some pious or charitable use. Upon that point Mr. Justice SELDEN says: " If, then, a bequest, unaccompanied by any designation of the purposes to which it is to be applied, be made to a society whose name and public acts indicate that its objects are religious or charitable, is there an implied trust which limits the use to such objects? When the bequest is to a corporation, there would seem to be some basis for such an implication, because, the objects, purposes and powers of the corporation being in all cases more or less clearly defined by its charter, the bequest may fairly be presumed to have been intended for those specific objects. But we have no such criterion for ascertaining the nature and purpose of a voluntary association. Those purposes may change with the will of the associates. They may be pious to-day, and impious to-morrow. There is no law to prevent or restrain such changes. It is difficult to see, therefore, how a bequest to such an association can be deemed to create a ' charitable use,' unless the purpose to which it is to be devoted is pointed out by the testator." pp. 385–6. After this distinct intimation of his opinion on the question, the learned judge assumes, for the purposes of the case, " that where a bequest is made to an unincorporated society, whose general objects are known to be, as its name indicates, religious or charitable, a *trust is implied* that the fund shall be

devoted to those objects." In that case the bequest was declared invalid on account of the incapacity of the association to take, and the court held that it could not uphold it for a charitable or religious purpose. True, there are cases which hold that a mere naked bequest to an unincorporated association is valid as a charity. But the observations of Judge SELDEN suggest some of the difficulties in the way of supporting such bequests under the law of charitable uses, where there is no designation of the purposes to which the fund is to be applied. And no argument would seem to be necessary to point out that these difficulties are quite insurmountable in a devise of real estate to a charity, under a statute which makes it essential to the validity of the trust that its purpose and object shall be fully expressed and clearly defined upon the face of the will itself. It is said by the learned counsel for the defendants, that in interpreting the fifth subdivision we must be governed by the law of charities as it existed prior to this statute, and that we should hold that a trust was fully expressed and clearly defined which would have been so regarded under the former law. But such a construction seems to us entirely inadmissible, for the reason that it completely nullifies and destroys the statute, which was plainly intended to cut up and make void a vague or indefinite trust, which by the former law had been held good.

On the argument, no importance was attached to the act of incorporation obtained subsequent to the commencement of this action; and it is clear upon the authorities that the question presented is not affected by that circumstance. *Owens v. The Missionary Society of the M. E. Church,* 14 N. Y., 380, and *White et al. v. Howard et al.,* 46 id., 144. Besides, notice of *lis pendens* was duly filed when the suit was commenced.

It is further insisted that the devise in question is good as a devise in trust for the lives of the trustees, or the longest liver of them, when it would wholly fail. But if we are right

in the view we have taken, that the devise is void because it does not meet the conditions of the fifth subdivision, it fails entirely. This is obvious.

Other objections were taken to the devise. It was objected that it violated the statute of perpetuities, and was void on that ground. A devise to a charity would seem to require that the property be held in perpetuity for the charity. But it will be seen that the trust authorized by the fifth subdivision must be limited in time. This consideration raises a doubt whether that provision was intended to apply to a charitable use or trust at all. For the purposes of this case we have assumed that it did, and have so considered the question. We do not see how this objection is to be overcome, but will not express a definite opinion upon the point.

The other objection, that the order of St. Dominican and St. Catharine's Female Academy, being unincorporated voluntary associations, could not therefore take the devise as beneficiaries, we do not consider. The decision in *Downing v. Marshall* as to the bequest to the Home Missionary Society, an unincorporated association, sustains the objection here; but we will not dwell upon it.

The devise being void, the property descended to the heirs-at-law. After the final settlement of the account of the executors, the probate court, by an order or judgment made under the provisions of ch. 103, R. S., assigned the residue of the estate of M. Thomasina Ginker to the defendants, to be held and owned by them absolutely in fee simple. The remaining question to be considered relates to the effect of this order or judgment upon the rights of the parties. The counsel for the defendants contend that, regardless of the question whether or not the will was valid to pass the property to the defendants in trust or in fee, still this order or judgment is binding and conclusive upon all the parties in interest until set aside or reversed by a direct proceeding instituted for that purpose; that it cannot be attacked in a collateral action, and therefore

bars a recovery. Chapter 103, which relates to the partition and distribution of estates by the probate court, in effect provides that, after the payment of debts, funeral charges and expenses of administration, and after the allowance authorized to be made for the expenses of the maintenance of the family, etc., and after the assignment to the widow of dower, and her share in the personal estate, the court "shall, by an order or judgment for that purpose, assign the residue of the estate, if any, to such other persons as are by law entitled to the same." (Sec. 2.) " In such order or judgment the court shall name the persons and proportions or parts to which each shall be entitled; and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any person having the same." (Sec. 3.) " Such order or judgment may be made on the application of the executor or administrator, or of any person interested in the estate." (Sec. 4.) Then follow provisions for making partition and distribution of undivided interests in the estates assigned. Now the inquiry is, What effect must be given to this order or judgment assigning the residue of the estate? Does it operate to settle and determine all conflicting adverse claims in respect to the title as between the heir and devisee? Or is it only coextensive with the right or title of the executor or administrator, and, so far as the real estate is concerned, merely disposing of the possession by directing it to be surrendered to those whom the court finds presumptively entitled to it, with a view to close the administration and discharge the executor or administrator? In the opinion which the learned circuit judge filed in this case, he says upon this question, that in view of the statute he should have but little difficulty in reaching the conclusion that the probate court was authorized to determine, and did, by the judgment rendered, determine, to whom the will of the testatrix gave the real estate in question; and that such judgment, if regularly obtained, was binding on the parties until set aside or re-

versed. And the circuit judge observes, if the plaintiffs had been duly notified of the application for the order assigning the residue of the estate, had been present at the hearing, had presented their claims and contested the questions involved, he should hold they were bound by the judgment, and could not in another action litigate their rights to the real estate. We neither affirm nor dissent from this view of the circuit judge. The question whether the judgment assigning the property, when regularly made, upon proper notice to all concerned, is binding and conclusive upon all the parties in interest until reversed, is very important, and will be left undecided in this case. Should it again arise, it will be treated as an open question. The proofs show that the plaintiffs resided in Germany; and the court found that no notice, either actual or constructive, was ever served upon them or either of them, of the proceeding for the distribution or assignment of the estate, prior to the time of the making of the order. We fully agree with the circuit court that such a notice was essential, and that the want of it deprived the probate court of jurisdiction to enter an order or judgment assigning the estate to the defendants, which would affect the rights of the plaintiffs. Failure to give the notice was not an irregularity or error merely, but it went to the jurisdiction of the court. It is a fundamental principle in the administration of justice, that no one shall be deprived of his property without his day in court, and having an opportunity to be heard. This principle is not always observed in the enactment of statutes, but it should ever be insisted upon and maintained, unless by express words or strong implication the legislature dispenses with the necessity of giving notice to a party before his rights are adjudicated. This remark is made in answer to the argument that as the statute is silent in respect to giving notice to parties interested, of the application for judgment assigning the estate, it need not therefore be given. We can draw no such inference from that omission. It may be true that the

statute nowhere requires previous notice to be given of the application for this order or judgment, while, in the subsequent sections in regard to the partition of the real estate, provision is made for giving notice of that proceeding to the parties in interest. But we do not feel warranted in presuming from these facts that the legislature intended the judgment assigning the real estate should be made without some notice to the heir. If the order of distribution has the effect claimed for it, it is conclusive upon the question of title to real estate, and may transfer it absolutely from the heir to the devisee under a void will. That a judgment attended with such grave results may be rendered by the probate court without notice to the heir, we are unwilling to hold until the legislature so declares by express words. This question is not entirely new in this court. In *Bresee v. Stiles et al.*, 22 Wis., 120, it was decided that an order of the probate court distributing an estate binds only parties who have notice of the proceeding. The argument of counsel in that case in support of the doctrine that the order was conclusive upon all concerned, was similar to the one made here. The court gave this answer to it: "But it is further claimed, that the after-born children were barred and divested of all interest in the estate by the order or judgment of the county court assigning the estate. It is said to be the special duty of the probate courts, under our statute, to admit wills to probate; to adjudicate upon the rights of legatees and heirs; to settle all estates of deceased persons; and finally to assign or distribute such estates among the persons by law entitled to the same; and, the county court having made an order of distribution in this case which disposes of the entire estate; and divests any title which the after-born children might take in the same, that this order is final and conclusive upon the rights of those heirs, until it is reversed and set aside on appeal. Now what effect should be given to an order of distribution made by the county court which should divest the title of heirs in real estate, when those

heirs have had notice, is a point upon which we express no opinion. It is sufficient here to say that it nowhere appears that these minor heirs, whose rights are affected by the order, ever had any notice of it or any opportunity to contest its validity. * * In order to bind these minor heirs by this order of distribution, it should at least appear that they were before the county court, or had notice of the proceedings." pp. 125, 126. It is quite apparent that we cannot sustain the conclusive and binding force of the judgment before us upon the question of the title to the real estate, except by directly overruling the doctrine of this case. Fully approving the principles of that decision, we give them our sanction.

It is not necessary to enter upon an examination of the cases bearing upon the question of the construction of orders and judgments of probate courts. In certain matters these orders and judgments are conclusive upon the questions adjudicated. The counsel for the defendants, however, clearly point out a vital difference between the jurisdiction and powers of these courts and those of courts of general jurisdiction. The former are limited strictly and precisely to the powers conferred by statute, and what is irregularity and error merely in a court of general jurisdiction, to be corrected on error or appeal, becomes with them in many cases defect of jurisdiction, and renders their judgments void. For certain purposes the order or judgment of distribution may be deemed conclusive and final. In *Loring, Adm'r, v. Steineman et al.*, 1 Metc., 204, the court held that "a decree of distribution made by a probate court, after such notice as the court, in its discretion, shall think proper to order, is so far conclusive as to protect an administrator acting in good faith, in conforming to it." *Kellogg v. Johnson*, 38 Com., 269, states the same doctrine. We do not find it necessary to question the soundness of these decisions. Nor do we think the conclusion which we have reached is necessarily in conflict with the decisions in *Emery v. Hildreth*, 2 Gray, 228; *Peters v. Peters*, 8 Cush., 529;

*Gates v. Treat*, 17 Conn., 388, and that class of cases. We hold that, as the plaintiffs had no notice of the application for the order or judgment of distribution, they are not concluded by it. To say that the notice required to be given of the application for the probate of the will has the effect to bring all parties interested in the estate before the probate court, so that, without further notice, the heir is concluded in respect to the title of real estate under a final order of distribution, would be to lay down a rule which would often lead to great evil and injustice. In the present state of our statutory law, we are unwilling to sanction such a doctrine. Further than this it is not necessary now to go.

The cases of *Nash v. Church*, 10 Wis., 303, and *Kane v. The Rock River Canal Co.*, 15 id., 179, as to the effect of a judgment of partition, do not seem to require any special comment. Those decisions rest upon the peculiar provisions of the statute in that class of cases, and cannot be invoked in aid of the claim of the defendants here.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.

On a motion for a rehearing, a brief was filed for the appellants, signed by *Fuller & Dyer* as attorneys, and *L. S. Dixon* of counsel, in which it was urged that the court had not only decided the questions, whether the judgment of the probate court was conclusive against the plaintiffs, and whether the will created a valid trust for a charitable use, which were the only questions raised and discussed by the appellants' counsel at the former hearing, but had also decided that, treating the trust as merely a *passive* one, the beneficiaries could not take the legal title under the statute, because they were a mere voluntary association, and that the devise therefore wholly failed, and the title passed to the heirs. Counsel contended at length that there is no absolute rule of

law which forbids in all cases the transfer of title to land, whether by deed or will, to a voluntary association; that, on the contrary, as a conveyance to a partnership, by the firm name, vests the title in the individuals composing the firm at the time of such conveyance, so a conveyance or devise of land to a voluntary association, without anything to indicate that the persons who may from time to time compose such association are to take *in succession*, is effectual to vest the title in the persons who compose such association at the time of the devise or conveyance, where those persons are definitely known or capable of being precisely identified by proof; and that while there are some associations whose organization and character is so well known that the court can say as a matter of law that the associates or constituents are incapable of taking the legal title because they are a fluctuating and uncertain body of persons, composed of no fixed and definite number, not capable of identification, and having no capacity to deal with the legal title (as the inhabitants of a town or county not incorporated, etc.), yet as to "the order of St. Dominican and St. Catharine's Female Academy, located in the city of Racine in the state of Wisconsin," the court certainly could not take judicial notice of the number of persons composing it, of its nature and objects, of the relations existing between the associates, or of any fact touching its organization, management or business; that these things were properly matters to be shown by evidence, before the court could determine whether the associates of that body could not take title to land by virtue of a deed or devise running to the body; and that upon a second trial of this action, to which the defendants are entitled by the statute, they expect to be able to show such facts concerning the organization and character of the body named, as will satisfy the court that, under the authorities upon that subject, the will is valid to transfer the legal title to the premises in dispute, to a small and definite number of individuals, capable of perfect and easy iden-

tification, who composed the body named at the time of the testator's demise.* For these reasons, counsel asked that the court would modify its opinion so as not to prejudge the questions which would be properly and fully presented for the first time upon such second trial.

In the brief for the appellants on this motion, signed by *Van Buskirk & Ritchie*, with *Fred. Winkler* of counsel, it was contended, among other things, that, inasmuch as the court had decided that there was "no possible ground for saying that this trust, whether passive or active, is fully expressed and clearly defined in the will," and that "this was essential to impart to it validity," it followed of necessity that the title passed to the heirs.

COLE, J. The learned counsel for the appellants have moved for a rehearing in this cause, or for a modification of the sentence in the opinion which reads as follows: "The devise being void, the property descended to the heirs-at-law." It is said that the proposition of law embraced in this paragraph was not distinctly and fairly presented by the record, and was not discussed on the former argument either in the printed briefs or orally before the court. The counsel therefore ask that we do not attempt to decide the question definitely at this stage of the cause, but reserve *our* judgment upon it until such time as it shall be fairly presented and argued. It does not occur to us that there is any valid objection to our complying with this request of counsel. It is true, the question as to what would become of the legal title if the devise or trust should be held void, was not discussed on the former argument. It seemed to me, however, a neces-

---

* The argument and authorities of the counsel to the point that conveyances and devises to a voluntary association will in some cases vest the title in the persons composing such association at the time when the instrument took effect, are not reported here, because it is probable that the subject will hereafter be discussed fully by counsel on both sides, in this court. — REP.

sary logical consequence that it would in that event descend to the heirs-at-law. But still the question is a difficult one, and it is desirable to have all the light possible upon it before it is decided. The opinion is therefore modified in the particular named, and the motion for a rehearing is thereupon denied.

The learned counsel for the respondents observe, in their argument filed in opposition to the motion for a rehearing, and against any modification of the opinion on the question suggested, that the motion or request is most remarkable and unprecedented in the history of judicial proceedings, being, as it is said, nothing more than an attempt to extort from this court an expression of an opinion upon a hypothetical case. An attempt of this kind, it is remarked in substance, could not have been expected from one who had occupied an exalted judicial office in the state, and is to be looked upon as an effort, through eminent ability and the possible influence of his former position, to gain some advantage. The counsel responsible for these remarks probably did not stop to consider how improper or unjust they were to all concerned, or they would not have made them. No effort is made to obtain an expression of opinion upon any question, but the court is asked to withhold its judgment upon a point until further argument. That is all.

*By the Court.*— Motion denied.

RYAN, C. J., having been of counsel in this cause, took no part in the decision.