Estate of Hoffen.

---

## ESTATE OF HOFFEN.

*January 12 — January 31, 1888.*

*Will: Charitable bequest: Uncertainty.*

A bequest to "the poor of the city of Green Bay," there being, at the time of the testator's death, neither city paupers nor a poor fund in said city, and no method being provided in the will for ascertaining the persons intended, is void for uncertainty.

APPEAL from the Circuit Court for *Brown* County.

The case is stated in the opinion. The appeal was taken by the city of *Green Bay*.

For the appellant there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Wigman*. To the point that the class designated was sufficiently definite to uphold the bequest, they cited *Howard v. Am. Peace Soc.* 49 Me. 288; *Heuser v. Harris*, 42 Ill. 425; 2 Story's Eq. Jur. 1139; *Prickett v. People*, 88 Ill. 115; *Gould v. Taylor Orphan Asylum*, 46 Wis. 106; Perry on Trusts, secs. 698, 699; *Att'y Gen. v. Clarke*, Ambler, 422; *Hesketh v. Murphy*, 21 Am. Law Reg. 659, and note; *S. C.* 36 N. J. Eq. 304; *McLain v.*

*School Directors*, 51 Pa. St. 196; *M'Girr v. Aaron*, 1 Penn. 49; *Webster v. Morris*, 66 Wis. 366.

For the respondent the cause was submitted on the brief of the *Attorney General.* He cited *Heiss v. Murphey*, 40 Wis. 276; *Webster v. Morris*, 66 id. 391; *Downing v. Marshall*, 23 N. Y. 382; *Beekman v. Bonsor*, id. 298; *Dodge v. Williams*, 46 Wis. 100; Perry on Trusts, secs. 719, 729; *Bascom v. Albertson*, 34 N. Y. 584; *Grimes v. Harmon*, 35 Ind. 198; *Baptist Ass'n v. Hart*, 4 Wheat. 1; *Wilderman v. Mayor*, 8 Md. 551; *Lapage v. McNamara*, 5 Iowa, 124; *Owens v. Missionary Soc.* 14 N. Y. 380.

ORTON, J.  On the 16th day of August, 1876, Emile Louis Hoffen, a Catholic priest of *Green Bay*, made his last will, the ninth clause of which is as follows: " The rest, residue, and remainder of my estate, I give and bequeath to the Salesianum, near the city of Milwaukee, in the state of Wisconsin, *and the poor of the city of Green Bay*, in the state aforesaid, *to be equally divided* between the said two legatees, share and share alike." On appeal from the county court, the circuit court of Brown county held the clause above italicised void for uncertainty, and, there being no heirs, ordered the fund so sought to be disposed of paid into the state treasury. From that order this appeal is taken.

The question was very ably argued by the attorneys of the city of *Green Bay* and by the attorney general, and the authorities quite extensively reviewed. The testator died on the 29th day of April, 1879. At the time of the death of the testator there were no city paupers or poor fund in the city of *Green Bay,* the county system of supporting the poor being in force. This system was changed in 1880, and since that time the city of *Green Bay* has had to support its own poor. There is an important admission in the record, " that at the time of the death of the testator" " *there were no city paupers nor a poor fund* in the city of *Green Bay;*" " *that*

*since 1880 there was a class known as the poor of the city,*— that is, a class supported by said city in the same manner as towns support the poor under the town system, and a poor fund, and the city has ever since said year 1880 supported and provided for its poor in said manner."

We think that the circuit court decided correctly that this bequest is void for uncertainty. It would be profitless to cite or review the authorities from other states upon such a question, when this court has passed upon it, not only directly but upon every preliminary question, after the fullest review of the authorities.

1. This bequest vested, if at all, at the death of the testator. " When there is nothing to indicate to the contrary, a bequest or devise to a *class of persons* takes effect in favor of *those constituting the class* at the time of the testator's death." *Scott v. West,* 63 Wis. 565.

2. It should be *charitable. Webster v. Morris,* 66 Wis. 366.

3. There should be a trustee appointed by the will to administer it. The courts would be compelled to resort to the doctrine of *cy pres,* which does not prevail in this state, to establish a trust in this will. *Ruth v. Oberbrunner,* 40 Wis. 238.

4. The bequest, by its terms, vested *directly* in the poor of the city of *Green Bay,* and such poor persons are not certain, determined, or defined, and there is no way provided by the will for selecting them. This is especially fatal to this will. This was the ground upon which the bequest in *Heiss v. Murphey,* 40 Wis. 276, was held void, and that case is direct and sufficient authority for holding this bequest void for the same reason. This is a stronger case of uncertainty than that. That was a bequest " to the Roman Catholic orphans of the diocese of La Crosse," and the executor was the Roman Catholic bishop, empowered to sell the property *and use the proceeds for the benefit of such Roman Catholic orphans,* and yet it was held that there

was no way by which the beneficiaries could be ascertained or determined.  It might in that case, with but slight use of the doctrine of *cy pres*, have been held that the executor might make the selection of those orphans who should have the benefit of the bequest.  But it was sufficient that he was not empowered to do so, and, if he had been, there was no way in which he could do so with any certainty.  The present chief justice said in the opinion: " How is it possible to ascertain and determine what orphans were intended to be benefited?  Are they whole or half orphans?  Are they the orphans of parents both of whom were members of the Roman Catholic Church, or will an orphan of a Roman Catholic father or of a Roman Catholic mother come within the designated class?  Are the objects of this charity the full orphans or half orphans who were living within the diocese at the death of the testator, or will such of either class as may thereafter come into the diocese be entitled to take as beneficiaries?  Again, upon what principle, or in what manner, is the fund created by the sale of the real estate to be expended?  Is the executor or trustee to apportion it equally among the orphans of the diocese when it is ascertained who are entitled to take, or is he to dispose of it in his discretion for the benefit of such orphans as he may elect from time to time?  These questions suggest the perplexity and difficulties which the court must encounter in establishing and carrying into effect this trust. It seems to us they are insuperable."  I have quoted more at length from the opinion, because the language is especially appropriate to this case, and the decision directly rules this case.  All the uncertainties and difficulties here suggested are present in this case, and many more, as we shall see.

In *Webster v. Morris, supra,* the true rule as to certainty of such bequests is laid down in such clear and explicit language, applicable to that case as well as to this, that I quote

it: "Before the power can be exercised, however, the scheme of charity must be sufficiently indicated, *or a method provided whereby it may be ascertained*, and its object made sufficiently certain to enable the court to enforce the execution of the trust according to such scheme and for such object. It must be of such a tangible nature that the court can deal with it." The words which I have taken the liberty to italicize in the above quotation were especially applicable to that case. The will provided *a method* whereby it might be ascertained who "the resident poor of the town of Omro" were who should receive the benefit of the charity. The trustees of the Presbyterian Church were clothed with the power and discretion of ascertaining them, and of distributing the needed charitable relief among such persons as they should determine, from time to time, were the resident poor of the town of Omro. Besides this, the charity was to continue from year to year, as the interest upon the fund should become available.

We may now apply intelligently these principles to this bequest:

(1) According to authority, the legal effect of this bequest was to *vest* in the "poor of the city of *Green Bay*" at the death of the testator. Here is the first uncertainty, for it is very questionable whether the testator so intended. The first year after the death of the testator, in which this fund if possible should have been enjoyed by the poor of *Green Bay*, has long since passed. Who were the poor entitled to this charity at the death of the testator? Who shall determine? It may be that they are poor no longer and do not need it.

(2) Several classes of poor persons may come within the definition and meaning of the language. It may mean that class of the poor known as *paupers*. Mr. Webster defines the word "pauper" as "a poor person, especially one so indigent as to depend on charity for maintenance, or one

supported by some public provision." He defines the word
" poor " as " destitute of property; wanting in material
riches or goods; needy; indigent; *necessitous*, denoting ex-
treme want." " It is also applied to persons who are not
entirely destitute of property, but who are not rich." " *(In
law.)* So completely destitute of property as to be entitled
to maintenance from the public." Bouvier defines " pauper "
as " one so poor that he must be supported at public ex-
pense." The words " pauper ", and " poor " have nearly
the same meaning, and they both embrace several classes.
Did the testator intend that this fund should go directly to
such poor persons of the city of *Green Bay* as were provided
for already by the county of Brown, and in addition to such
public support? If so, would it, in such a case, be a chari-
table bequest? If it was intended to relieve the county of
that burden, either wholly or partially, would it not be still
less a charity? And yet the testator may have so intended.
Who shall say? But besides this class of the poor, who are
actually supported by the public according to law, there are
most probably a very large number of equally poor persons
who never applied for such support, and suffer great desti-
tution rather than to do so, through pride or shame or
other natural feeling. Was not this the worthy, deserving
class of poor intended to take this bequest, either exclusively
or with those already supported by the *poor* fund? There
was another class not supported by the county but relieved
from time to time by *private* charity. One of the above
definitions of the poor is " persons who are not entirely
destitute of property, but who are not rich; such as a poor
man or woman; poor people." There may yet be another
class who may well be called poor. They have barely an
absolutely necessary support, but nothing beyond it. They
never have any of the common comforts of life. They are
truly objects of charity, and yet cannot apply for public
support. All these several and various classes may come

within the terms of the will. It is impossible for the court to determine to which of these classes, or whether to all of them, the testator intended his bequest should go. It is a *vested* bequest, and the will appoints no trustee or *almoner* to distribute his bounty or determine the persons entitled to it. The uncertainty and utter vagueness of this bequest is apparent. Of the two strongest cases cited by the learned counsel for the appellant he says in his brief: "The court in *Howard v. Am. Peace Soc.* 49 Me. 288, and in *Heuser v. Harris*, 42 Ill. 436, uphold bequests of this nature where no trustees were appointed by the will, *yet they came to opposite conclusions as to where the fund should go,*— whether to those receiving aid, or to the poor generally." This is an admission of the utter uncertainty of the will in this respect. The courts, of course, could not agree upon the question, for there is no certain criterion upon which an opinion could be founded. The many cases cited in the cases in this court above referred to, need not be repeated here, or any re-examination of them made. It is sufficient that the case of *Heiss v. Murphey, supra,* decides this case also.

*By the Court.*— The order of the circuit court is affirmed.