## WILL OF FULLER.

*December 10, 1889 — January 7, 1890.*

*Wills: Charitable bequest: Uncertainty: Cy pres.*

1. A testator gave a sum in trust to the deacons of a certain church, and their successors in office, " to be funded with good security on improved land, and the interest to be paid annually to the American Baptist Publication Society, located at Philadelphia, Pa., to aid in the support of a Baptist colporteur and (or) missionary in the state of Wisconsin." The deacons (who were not an incorporated body) filed their declination of the trust. *Held,* that the bequest was void for uncertainty.

2. The doctrine of *cy pres* is not recognized and acted upon by the courts of this state.

APPEAL from the Circuit Court for *Rock* County.

The facts are sufficiently stated in the opinion. The *American Baptist Publication Society* appeals from the judgment of the circuit court affirming the decision of the county court.

For the appellant there was a brief by *Finches, Lynde & Miller* and *E. P. Smith,* and oral argument by *Mr. Smith.* They contended, *inter alia,* that a devise to the *American Baptist Publication Society,* to aid in the support of a Baptist colporteur and missionary within the state of Wisconsin, is a good charitable devise. *Jackson v. Phillips,* 14 Allen, 556; Perry on Trusts, sec. 697; *Att'y Gen. v. Stepney,* 10 Ves. 22; *Winslow v. Cummings,* 3 Cush. 358; *Bliss v. Am. Bible Soc.* 2 Allen, 334; *Pickering v. Shotwell,* 10 Pa. St. 23. The nature of the gift shows that the application of the fund to charity was the dominant object in the mind of the testator, and that the selection or appointment by the trustees, as far as they might have a voice, was subordinate, or a means to an end. *Minot v. Baker,* 147 Mass. 348. It might well be that, inasmuch as the testator did

not contemplate the execution of the trust until the expiration of the life interest of his widow, and could not specify the trustees by their individual names, he simply made use of the term " deacons " as descriptive of the persons who, for the time being, might hold that position or office, and that he did not intend to confine the trusteeship to the body known as the deacons of the church. *Inglis v. Sailors' Snug Harbor*, 3 Pet. 99; *Russell v. Allen*, 107 U. S. 168; *Clement v. Hyde*, 50 Vt. 716; *Cruse v. Axtell*, 50 Ind. 49. The incompetency, inability, death, or non-appointment of a trustee will not defeat a trust once properly created. Perry on Trusts, secs. 38, 730, 742, 248, 721; *Dodge v. Williams*, 46 Wis. 102; R. S. secs. 2098, 2154, 2128; Pom. Eq. Jur. sec. 1026; *Bliss v. Am. Bible Soc.* 2 Allen, 334; *Cox v. Manners*, L. R. 6 Eq. 12, 574; *Laird v. Bass*, 50 Tex. 412; *Cruse v. Axtell*, 50 Ind. 49; *Clement v. Hyde*, 50 Vt. 716; *Att'y Gen. v. Downing*, Wilm. 23; *Brook v. Brook*, 3 Sm. & Gif. 280; *Withers v. Yeadon*, 1 Rich. Ch. 324; *Miller v. Meetch*, 8 Pa. St. 417; *Gibbs v. Marsh*, 2 Met. 243; *Grimke v. Grimke's Ex'rs*, 1 Dess. Eq. 375; *Brown v. Higgs*, 5 Ves. 495, 504; *Pierson v. Garnet*, 2 Bro. 38, 226; *Richardson v. Chapman*, 7 Bro. P. C. 318; 1 Powell on Devises (Jarman's note), 294; *Minot v. Baker*, 147 Mass. 348; *Loring v. Marsh*, 2 Clif. 469; 2 Story's Eq. Jur. secs. 1061, 1062; *Pickering v. Shotwell*, 10 Pa. St. 23; *M'Girr v. Aaron*, 1 Penn. 49; *Suter v. Hilliard*, 132 Mass. 412. But the charity here was the substance, and the alleged discretion of the trustees was merely a mode secondary and subordinate to the general object which was the essence of the gift. *Baylis v. Att'y Gen.* 2 Atkins, 239; *Cook v. Duckenfield*, id. 562–7; *Moggridge v. Thackwell*, 7 Ves. 67; *Minot v. Baker*, 147 Mass. 348; *White v. Ditson*, 140 id. 351; *Saltonstall v. Sanders*, 11 Allen, 446; *Dodge v. Williams*, 46 Wis. 99. Conceding that the object of this bequest is charitable, there can be no question that the court, or the

trustees appointed by the court, have the power to make it definite and certain. Perry on Trusts, 699, 700, 709; *Webster v. Morris*, 66 Wis. 384; *Bliss v. Am. Bible Soc.* 2 Allen, 334; *Dodge v. Williams*, 46 Wis. 70, 98; *Saltonstall v. Sanders*, 11 Allen, 446; *Craig v. Secrist*, 54 Ind. 419, 426; *Russell v. Allen*, 107 U. S. 168; *Chambers v. St. Louis*, 29 Mo. 543; *Loring v. Marsh*, 2 Clif. 493; *Ouls. v. Washington Hospital*, 95 U. S. 311.

For the respondent, the executor, there was a brief by *Dunwiddie & Goldin*, attorneys, and a separate brief by *A. S. Spooner*, of counsel, and the cause was argued orally by *B. F. Dunwiddie* and *Mr. Spooner*. They argued, among other things, that the discretion sought to be reposed in the deacons was a personal trust, and hence the court cannot appoint other trustees. Perry on Trusts, sec. 721; *Fontain v. Ravenel*, 17 Hôw. 369. The testator failed to nominate a competent trustee, because the deacons consisted of an unincorporated body and were incapable of action. *Grime's Ex'rs v. Harmon*, 35 Ind. 246; *State v. Warren*, 28 Md. 338; *Holland v. Peck*, 2 Ired. Eq. 255; *White v. Hale*, 2 Coldw. 77; *Heiss v. Murphey*, 40 Wis. 276. The bequest must fail because the will is entirely silent as to the beneficiaries. To constitute a valid charitable trust the beneficiaries must be certain, either as a class or as individuals, or capable of being made certain by authority given in the will to the trustee to select and speak for the testator. *Heiss v. Murphey*, 40 Wis. 292; *Grime's Ex'rs v. Harmon*, 35 Ind. 252; *Goddard v. Pomeroy*, 33 Barb. 546; *Ray v. Adams*, 3 Mylne & K. 237; *Dashiell v. Att'y Gen.* 6 Har. & J. 1; *Downing v. Marshall*, 23 N. Y. 366; *Owens v. Missionary Soc.* 14 id. 380; *Lepage v. McNamara*, 5 Iowa, 124; *Bridges v. Pleasants*, 94 Am. Dec. 44, and note; *Carpenter v. Miller*, 100 id. 744; *White v. Fisk*, 22 Conn. 31.

Will of Fuller.

COLE, C. J. Was the appellant entitled to the fund in question, to invest and apply the same according to the will, or, if not entitled to have the fund paid over to it, should it have been appointed trustee to execute the trust? Its claim to one or the other kind of relief is founded on the eighth clause of the will, which reads as follows: "I further give to my beloved wife, Achsa A., the rest and remainder of my property, whether real or personal, during her natural life, and whatever may remain at her decease I give in trust to the deacons of the First Baptist Church of Janesville, Wisconsin, and their successors in office, to be funded with good security on improved land, and the interest to be paid annually to the *American Baptist Publication Society*, located at Philadelphia, Pa., to aid in the support of a Baptist colporteur and (or) missionary in the state of Wisconsin. The said deacons may have a voice in the nomination and appointment of sd. colporteur and missionary, if they wish." The original will was sent up with the record for our inspection. It is admitted that it is in the handwriting of the testator, but on examination we are in doubt whether the character connecting the words "colporteur" and "missionary," where they first occur in the clause, is "and" or "or." This appears to be one of the many serious objections urged against the validity of the clause. But the more formidable objection is that the clause is void for uncertainty, and is incapable of being carried out under the laws of this state.

It may be proper to remark, before we proceed to a consideration of the objections to the validity of the bequest, that the testator died at Janesville in 1865, and the will was admitted to probate in August of that year. Mrs. Achsa A. Fuller, named in the will, survived her husband, and died in February, 1888. In April, 1888, the executor filed in the county court his account, showing that the estate of the testator has been fully settled, and the residue

of the estate in his hands was the sum of $2,100, to be disposed of under the direction of the court. The deacons of the First Baptist Church of Janesville filed with the county court their declination to accept the trust under the will. The appellant filed in said court its petition, setting forth these and other facts, and asked that the court order the fund to be paid to it by the executor, with directions to invest and apply the same as stated in the will; or, if the court should deem a trustee necessary, that the appellant be appointed such trustee, and that it have such other and further relief in the premises as might be in accordance with justice and equity. The county court denied the prayer of the petition, and dismissed it. This decision was affirmed by the circuit court on appeal.

It is claimed that the bequest is void on the ground that the scheme of the charity is uncertain and incapable of execution. We think this objection well taken, and that it must prevail. At the outset it may be observed that the doctrine of *cy pres,* so called, is not recognized and acted upon by the courts of this state. That doctrine is enforced by the English court of chancery, and by some courts in this country. But this court has held that the doctrine of *cy pres* rested upon prerogative or sovereign power, and was not strictly a judicial power, and consequently the courts of this state could not enforce it. *Ruth v. Oberbrunner,* 40 Wis. 238; *Heiss v. Murphey,* 40 Wis. 276. This consideration renders some of the decisions relied on by appellant's counsel, where a different rule prevails, inapplicable, as was justly observed by the respondent's counsel upon the argument of the cause.

It will be seen that the will gives the residue of the estate in trust to the deacons of the First Baptist Church of Janesville, and their successors in office, to be loaned on good security on improved land, and the interest to be paid annually to the *American Baptist Publication Society* of

Philadelphia, to be used in the support of a Baptist colporteur and missionary in Wisconsin. There is no indication as to what the colporteur and missionary should do, or where or with whom they should labor. It may be said that the words "Baptist colporteur and missionary" indicate the character and nature of the duties which these persons were to perform. If we refer to the lexicographers we find that "colporteur" is defined to be "one who travels for the sale and distribution of religious tracts and books." Webst. Dict. "A hawker and peddler; especially, in modern usage, a peddler of religious books." Worcest. Dict. In France, "a hawker of books and pamphlets; one who travels for vending small books." Imp. Dict. In France, "a hawker and peddler;" in England, "one who is engaged by a religious society or association to travel about and distribute or sell religious books or tracts of the society, in the latter case at reduced prices." Cyclop. Dict. "A person employed by a Bible or tract society, or the like, to distribute gratuitously or sell at low rates Bibles and various other religious publications." Century Dict. A missionary is "one who is sent upon a mission, especially one sent to propagate religion." Webst. Dict. Worcester and other lexicographers give substantially the same definition to the word.

It may be assumed that the testator intended that the deacons of the First Baptist Church should receive the residue of his estate, loan it upon good real-estate security, collect the interest, and pay it over annually to the appellant, to aid in the support of a Baptist colporteur and missionary, whose duty it would or should be to travel in Wisconsin, and distribute gratuitously or sell Bibles and various religious publications, or labor to extend religion among the people of the state. The deacons were also to have a voice or some agency in the nomination and appointment of the colporteur and missionary. Further than this, we

cannot ascertain, from the language, the plan of the charity which the testator had in his mind, or determine his purpose in making the bequest. Whether the colporteur or missionary should labor through the entire state, and sell or give away the religious books and publications; or whether they should expend their efforts among the colored or white population, or both; whether with the destitute or wealthy; and what publications they should distribute,— are all matters left in doubt and uncertainty. Should they devote their time and energies to working among the whole people, or only in particular districts? And who are to be the beneficiaries of this charity, and to be benefited by it? It seems to us no one can determine from the will. It may be said there was a discretion delegated to the deacons and the appellant which would cure these defects, and effectuate the charitable purpose of the testator. But we are met with another difficulty. The deacons of the church are not incorporated. They are not a body known to the law. They are constantly changing by death or removal from the city, and they have absolutely renounced the trust. That the discretion vested in the deacons as to the execution of this trust was a personal one, confided to them on account of their piety and fitness, and because they entertained the same religious faith as the testator, is so obvious that no argument is needed to prove the fact. The testator was willing to confide in the deacons to perform the duties and carry out the purpose which he designed to promote. But he made no provision for a transmission of the trust to another person. Indeed, the difficulty is the testator has not fully defined his charitable scheme in his will, but has left the whole matter so indefinite and unexpressed that it is impossible for the court to carry it out; and, before a court will carry into execution a charitable scheme, the scheme itself " must be sufficiently indicated, or a method provided whereby it may be ascertained and its object made

sufficiently certain to enable the court to enforce the execution of the trust according to such scheme, and for such object. It must be of such a tangible nature that the court can deal with it." *Webster v. Morris*, 66 Wis. 391. See also, *Heiss v. Murphey*, 40 Wis. 276, and *Estate of Hoffen*, 70 Wis. 522.

It seems to us there is a fatal uncertainty as to the charitable scheme in this will, and that it cannot be executed. It follows, from this view, that the judgment of the circuit court must be affirmed. The taxable costs of both of the parties in this court will be paid out of the estate.

*By the Court.*— Ordered accordingly.

