Hood vs. Dorer.

Hood, Administrator, Appellant, vs. Dorer, Respondent.

| 107 | 149 |
|---|---|
| s113 | 609 |

*March 21 — June 21, 1900.*

*Wills: Construction: Equitable conversion: Charitable trusts: Indefiniteness in beneficiaries: Judgments: Res adjudicata.*

1. A provision in a will, that real property be invested in a certain fund for the support and maintenance of a charity, is a direction to convert such property into money.

2. Testator, by his will, directed that upon the death of his wife his entire property be invested in a fund, provided for that purpose, for the benefit of the superannuated preachers of the church denominated the United Brethren in Christ. *Held,* that said clause is essentially a trust provision, applicable to a particular charitable purpose as distinguished from charity generally, with a class within which a trustee, when appointed, can select the beneficiaries, and is not too indefinite in its provisions to be enforced. *Harrington v. Pier,* 105 Wis. 485, followed. CASSODAY, C. J., dissents.

3. Testator's widow, to whom a life estate in the entire property was given, in an action for the construction of the will named as defendants " the superannuated preachers of the church denominated the United Brethren in Christ." Such persons were not a body corporate, and there was no proof of service of the summons on any person who was a superannuated preacher. *Held,* that the judgment rendered in that action, in effect that the real estate in question descended as intestate property to the widow, was not *res adjudicata* as to those persons.

APPEAL from a judgment of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This is an action in ejectment for the recovery of 120 acres of land in Grant county, Wisconsin, both parties claiming title under one Thomas Stewart, now deceased, the plaintiff being the administrator *de bonis non* of the estate of said Thomas Stewart. The evidence upon the trial showed that Thomas Stewart owned the property in question during his lifetime, and that he died September 13, 1882, leaving a widow, but no descendants; that he left a will, which was afterwards probated, the material parts of

which will are as follows: "First. After the payment of my just debts and funeral expenses, I give, devise, and bequeath unto my beloved wife, Mary Ann Stewart, for and during her natural life, provided she remains single after my decease, the use of and sole control and right to all my real and personal estate in the state of Wisconsin or elsewhere of which I may die possessed or be entitled to, and on her decease the said property to be invested in a fund provided for that purpose for the support and maintenance of the superannuated preachers of the church denominated the United Brethren in Christ. I give and bequeath to Solomon Stewart, my brother, the sum of one dollar; to my brother Abraham Stewart the sum of one dollar; and to my sister, Susan Keys, the sum of one dollar. I hereby nominate and appoint —— the executor of this, my last will and testament, and hereby authorize and empower him, the said ——, to compound, compromise, and settle any claim or demand which may be against or in favor of my estate."

Mary Ann Stewart, the widow, was duly appointed administrator with the will annexed of the estate of Thomas Stewart, and in August, 1883, she brought an action in the circuit court for Grant county for the construction of the will, naming as defendants in that action "the superannuated preachers of the church denominated the United Brethren in Christ" and De Witt C. Wood and William Loney. The summons and complaint in said action were served upon the defendants Wood and Loney, one of whom was a preacher in said denomination, and the other a class leader, but neither of them was a superannuated preacher. An answer was served in that action by John D. Wilson, who apparently appeared as the attorney for the defendants generally, which answer was verified by William Loney, and prayed a judgment of the court declaring the bequest for the benefit of the superannuated preachers a valid one. The

action was tried by the court, and resulted in findings and
judgment that the devise in question was void, and that
the real estate of Thomas Stewart descended to Mary Ann
Stewart in fee.

After this judgment Mary Ann Stewart sold the real es-
tate in issue in this action to the defendant, who took pos-
session thereof, and was in possession at the time of the
commencement of this action claiming title.  Mary Ann
Stewart afterwards married one Haskins, and died before
the commencement of this action.  After her death the
plaintiff was appointed administrator *de bonis non* with the
will annexed of the estate of Thomas Stewart, and he brings
this action as such administrator, claiming that the pro-
visions of the will are valid, and that he is entitled to the
possession of said real estate in order to sell and convert the
same into money, and create the fund directed by said will.

On the trial of this action it appeared that the United
Brethren in Christ are a sect of Protestant Christians or-
ganized early in the present century in the state of Mary-
land, and that at the time of the execution of Thomas Stew-
art's will they numbered about 150,000 members in the
United States and Canada, and that they had a church gov-
ernment and discipline, having colleges and educational in-
stitutions, ordained bishops and ministers, and holding con-
ferences.

The court held the direction in the will for the benefit of
the superannuated preachers void for uncertainty, and the
administrator appeals.

For the appellant there were briefs by *Bushnell, Watkins
& Moses,* and oral argument by *A. R. Bushnell.*

*Aldro Jenks* and *H. W. Brown,* for the respondent.

The following opinion was filed April 6, 1900:

WINSLOW, J.   The sole question presented is as to the va-
lidity of that provision of the will of Stewart which directs
that upon the decease of his wife his entire property is "to

be invested in a fund provided for that purpose for the support and maintenance of the superannuated preachers of the church denominated the United Brethren in Christ."

There can be no doubt but that this clause amounts to a direction to convert the real estate of which he died possessed into money. In no other way can real property be *invested in a fund.* Hence the doctrine of equitable conversion applies, and, if a bequest of personal property to be used for the support of the superannuated preachers of a particular sect is valid, then this clause in the will is valid. In disposing of the case the trial judge held the will void on the ground of uncertainty and indefiniteness, relying upon the case of *Will of Fuller,* 75 Wis. 431. Were the rule of that case to be followed, it is not easy to see how the conclusion reached by the trial judge could be avoided. In the recent case of *Harrington v. Pier,* 105 Wis. 485, however, the doctrine of the *Fuller Case* was substantially overruled. In fact in that case nearly or quite all the questions which arise in this case were so fully treated by Justice MARSHALL, the result being to sustain such a trust as that before us, that it would seem unnecessary to enlarge upon the subject here.

In that case it was said: "It follows that indefiniteness of beneficiaries who can invoke judicial authority to enforce the trust, want of a trustee, if there be a trust in fact, or indefiniteness in details of the particular purpose declared, the general limits being reasonably ascertainable, or indefiniteness of mode of carrying out the particular purpose, do not militate against the validity of a trust for charitable uses. Given a trust, with or without a trustee, a particular purpose, as education or relief of the poor as distinguished from a bequest to charity generally, and a class, great or small, and without regard to location necessarily, as ' worthy indigent females,' or 'indigent young men studying for the ministry,' or 'resident poor,' or 'indigent children of Rock county,' or 'the boys and girls of California' (*People ex rel. Ellert v. Cogswell,* 113 Cal. 129), and we have a good trust

for charitable uses. The court, through its strictly judicial power, may fill the office of trustee, if necessary. The trustee can select the immediate beneficiaries or objects within the designated class and scheme. He can determine upon the details necessary to effect the intention of the donor within the general limits of his declared purpose, and execute the trust accordingly; and the proper public agencies, if necessary, can invoke judicial power to enforce such execution."

These considerations really dispose of the present case. There are present in this bequest all the essential requirements above enumerated. The provision is essentially a trust provision. No trustee is appointed, but the proper court has power to appoint one, so that the trust may not fail (*Sawtelle v. Withum*, 94 Wis. 412), and there is a particular and meritorious charitable purpose, namely, the support and maintenance of the worn-out preachers of a certain religious body. This completes the charitable scheme so that it may be carried out. The trustee appointed by the court can select the beneficiaries within the class named, and can wisely settle the necessary details of administration of the charity within the general limits of the testator's declared intention without serious difficulty.

It was not seriously claimed upon the argument that the judgment in the former action brought by the widow for construction of the will, in which " the superannuated preachers " of the sect in question were named as defendants, was of any effect, nor is it seen how it could have any effect. The " superannuated preachers " were not a corporate body, and hence not capable of being sued under such a general designation. Furthermore, they are necessarily constantly changing, and, even if some of the then members of the class actually appeared and defended, the result, manifestly, could not bind others.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment for the plaintiff.

CASSODAY, C. J.   I dissented in *Harrington v. Pier*, 105·
Wis. 485.   The court holds that the decision of this case is·
ruled by the opinion of the court in that case.   The two·
cases are fairly distinguishable in their facts.   I may, there-
fore, be permitted to respectfully dissent in this case.   In
doing so, I shall add but very little to what is contained in
my dissenting opinion in that case.   I fully concur in the·
findings of Judge CLEMENTSON in the action to construe the·
will in this case, and which findings are in the record, and
also with the findings and opinion of the late Judge BEN-
NETT, in this case, to the effect·that the provision of the will
in question is too indefinite and uncertain to enable the court
to ascertain and carry out the supposed intentions of the·
testator; " that the beneficiaries are not ascertained, or in
law capable of being ascertained, and that the trust at-
tempted to be created by said will is void."   If the *cy pres*
doctrine under 43 Eliz. ch. 4 (2 Stats. at Large, 708), men-
tioned in the dissenting opinion in the other case, was in
force in this state, it might be an important question whether
the bequest in this case " for the support and maintenance·
of the superannuated preachers of the church denominated·
the United Brethren in Christ " came within any of the·
numerous objects therein mentioned.   If any, it would seem
to be the first, which is, " for *relief* of the aged, impo-
tent, and poor people."   " Superannuated preachers " are,
manifestly, such preachers as are impaired or disabled·
through old age, for such is the definition of the word.   Cent.
Dict.   If such " relief " was only intended for those who·
are " poor," then it would not come within the provisions of
that statute, since, in the language of Sir WILLIAM GRANT,.
" the question is, not whether he [the trustee] *may not apply
it* upon purposes strictly charitable, but whether *he is bound so
to apply it.*"   *Morice v. Bishop of Durham*, 9 Ves. 406.  While
it may be true that most preachers who are impaired or dis-
abled through old age are poor, yet they are not necessarily

all poor.  But, as I do not understand that the opinion of the court in *Harrington v. Pier, supra*, or in this case, is based upon the *cy pres* doctrine under the statute of Elizabeth, it is unnecessary to consider the question.

A motion for a rehearing was denied June 21, 1900.