TEIKE KLUMPERT v. JAN VRIELAND ET AL., Appellants.

**Wills:** CONSTRUCTION: WHAT LAW GOVERNS. The validity of a resid-
uary clause in a will leaving property to the poor people of a
municipality in a foreign country is to be determined by the law
of the testators domicile and location of the property, and not
by the law of the place of distribution.

**Charitable bequests:** EQUITABLE JURISDICTION. Courts of equity look
with favor upon all bequests for charitable purposes, but in
giving them effect they must be guided by the established prin-
ciples of law.

**Same:** Charitable bequests for the benefit of the poor of a designa-
ted city or locality will be given effect by courts of equity.

**Same:** TRUSTEE: APPOINTMENT BY COURT. Even though no person
or instrumentality be designated in an instrument creating a
charitable trust to carry it into execution, it will not be allowed
to fail for that reason, but a court of equity will make such
appointment.

**Same:** TRUST IMPLIED. Where a bequest is to the poor of a specified
locality, as of a county, town or parish, the design of the testator
to create a trust through which to administrate the charity ·is
to be implied from the nature of the gift.

**Same:** INTENT OF TESTATOR. The testator in referring to the poor of
a place in a foreign country, as to the "poor of Voorst," will
be presumed to have accorded the expression the meaning in such
country, as identifying the beneficiaries.

*Appeal from Sioux District Court.*—HON. F. R. GAYNOR
Judge.

MONDAY, MAY 10, 1909.

D. J. KLUMPERT died testate September 23, 1906,
leaving real and personal property of the estimated value
of $12,760. His will, duly admitted to probate, after pro-

viding for the payment of debts, directs the disposition of his property as follows:. "(1) To Jan. Vrieland, Ryssen, Netherlands, Prov. Overyssel, one thousand dollars. (2) To Gerhardth Vrieland, Deventer, two hundred dollars. (3) To the children of D. J. Klumpert's brother Frederick Klumpert, Voorst, Gelderland, Netherlands, three hundred dollars. (4) To First Presbyterian Church of Hospers, Sioux County, Iowa, five hundred dollars after the death of both Mr. and Mrs. Klumpert; interest on said sum to be paid at the rate of 6 percent to Mrs. D. J. Klumpert if she should survive. (5) To the children of Jannes Oldenkamp after the death of both Mr. and Mrs. Klumpert fifteen hundred dollars, interest 6 percent to be paid Mrs. D. J. Klumpert should she survive. (6) To the widow of H. Hagen, Le Mars, Iowa, five hundred dollars. (7) To Dries Mouw, Hospers, Iowa, one hundred dollars. (8) The balance to the poor of Voorst, Gelderland, Netherlands. I appoint Rev. Dries Monro, Hospers, Sioux County, Iowa, as executor of this." This was subsequently changed by codicil striking out the fifth clause. In this action the construction of the eighth clause is sought; plaintiff asserting its invalidity for that the beneficiaries intended are uncertain and no trustee is named or power of appointment conferred in the will. The executor answered by alleging the validity of the will and pleading that Voorst is a municipal corporation in the province of Gelderland, in the Netherlands; that by the Civil Code of that country "the provisions in a will in favor of the poor without further identification is supposed to be made in behalf of all the poor without exception of religion, who in the community where the inheritance has become vacant are supported by institutions of charity;" that no trustee is necessary, but that under the laws the legacy is to be divided among the institutions of charity, each in proportion to the number of poor supported and in trust for them; that at the time of the tes-

tator's death there were ten such institutions in Voorst, supporting one hundred and thirty-two poor persons (stating the number supported by each and the portion of the legacy to which each institution is entitled); and that such institutions have authority to receive such funds as trustees for the poor of Voorst. To this answer a demurrer was interposed and sustained by the court. As the executor elected to stand on the ruling, an order was entered declaring the eighth clause void and directing the settlement of the estate with that eliminated. The executors appeal.—*Reversed.*

*G. W. Pitts* and *G. Klay,* for appellants.

*Van Oosterhout & Hospers,* for appellee.

LADD, J.—The sole inquiry is whether the residuary clause of decedent's will leaving of his property "the balance to the poor of Voorst, Gelderland, Netherlands," is valid. This necessarily depends on the law of decedent's domicile and location of the property, rather than the place of distribution. *Caruth v. Caruth,* 128 Iowa, 121.

1. WILLS: construction: what law governs.

The objections to the clause are: (1) That the beneficiaries are uncertain and impossible of identification; (2) no trustee is designated to select them; and (3) no trust is created. In passing on the questions thus raised, it will be well to keep in mind the suggestion of Gibson, C. J., in *Bask v. Bask,* 9 Pa. 260, that the courts have no more authority to make wills for the dead than contracts for the living, according to judicial notions of fitness and propriety, and also the statement of Ryan, C. J., in *Dodge v. Williams,* 46 Wis. 70 (1 N. W. 92, 50 N. W. 1103), that it is as much the duty of courts to uphold and enforce an individual's will after the death as to uphold and enforce his contracts made during life.

So that, while courts of equity will look with favor

on all charitable bequests, they will not ignore established principles of law in order to give them effect. Neverthe-

**2. CHARITABLE BEQUESTS: equitable jurisdiction.** less, as said by Lord Harwicke, in speaking of such a bequest, "there is no authority to construe it to be void, if by law it can pos-

sibly be made good." At the civil law legacies for charity were not allowed to fail because of the uncertainty or failure of the persons or objects for which destined. If left to the poor generally, it was sustained by giving it to the local hospital if there were one, and, if not, to the poor of the parish. If the testator appointed a person to carry the charity into effect, he was compelled to perform it; if no person was designated, the bishop or ordinary of the place of testator's nativity might compel its due execution. 2 Story's Equity Jurisprudence (13th Ed.) sections 1137, 1140.

Writers seem to agree that the rudiments of the law of charities in England were derived from the civil law, and that, long prior to the enactment of the statute of char-

**3. SAME.** itable uses in St. 43 Elizabeth, the court of chancery exercised in virtue of its inherent authority a large jurisdiction in cases of charities. *Vidal v. Girard's Executors,* 2 How. 127 (11 L. Ed. 125); *Jackson v. Phillips,* 14 Allen (Mass.) 539, 576; *Bascom v. Albertson,* 34 N. Y. 584; *Griffith v. State,* 2 Del. Ch. 421. As was observed in *Jackson v. Phillips, supra,* that statute did not enlarge the discretion of the chancellor to depart from the expressed intention of the founder of a charity, save under the sign manual of the crown. See 2 Perry on Trusts, section 694. The cases under the latter were of two classes: (1) Bequests to peculiar uses, charitable in their nature but illegal as for a form of religion not tolerated by law; and (2) gifts to charity generally, without any trust interposed, and in which either no appointment is provided for, or the power of appointment is delegated to persons who die without exercising it. Dis-

credit was brought upon the doctrine of *cy pres* by the arbitrary disposition of ·property by the sign manual. Thus, in the case of a gift of the first class to a Jesuba or assembly for reading the Jewish law it was applied to the support of the Christian Chapel at a foundling hospital. Nor was the power of enforcing bequests of the second class judicial, for the statute contemplated, not the expounding and carrying out of the testator's intentions, but the prerogative power of ordaining what he had failed to express.   This power of disposal by a sign manual of the crown was in direct opposition to the declared intention of the testator, and its exercise is generally held to be inappropriate to the institutions of this country.   *Grant v. Sanders,* 121 Iowa, 80.   In *Jackson v. Phillips, supra,* Judge Gray observed that this power "has never, so far as we know, been introduced into the practice of any court of this country; and, if it exists anywhere here, it is in the Legislature of the commonwealth as succeeding to the powers of the king as *parens patriae.*"   In so far as the statute recognizes, defines or indicates what are "charitable uses," it is part of the common law and undoubtedly has influenced the courts of this country in the direction of liberal construction of instruments which undertake to bestow charity.   See note to *Hoeffer v. Clogan,* 171 Ill. 462 (63 Am. St. Rep. 253).

Under that statute, as well as independent of it, the purposes of the bequest before us must be regarded as charitable.   Indeed, the relief of the poor and unfortunate has been, and doubtless will ever continue to be, the most prolific field of charity.   That trusts for the benefit of the poor of a designated city or locality will be enforced is no longer an open question.   *Hunt v. Fowler,* 121 Ill. 269, 277, (12 N. E. 331, 17 N. E. 491); *Phillips v. Harrow,* 93 Iowa, 94; *Landis v. Wooden,* 1 Ohio St. 160 (59 Am. Dec. 615); *Hesketh v. Murphy,* 35 N. J. Eq. 23; *Id.,* 36 N. J. Eq. 304; *Howard v. American Peace Society,* 49

Me. 288, 302; *Derby v. Derby,* 4 R. I. 414; *Williams v. Pearson,* 38 Ala. 299; 2 Perry on Trusts, section 732; *In re Strong's Appeal,* 68 Conn. 527 (37 Atl. 395); *Zeisweiss v. James,* 63 Pa. 465 (3 Am. Rep. 558). See *Miller v. Atkinson,* 63 N. C. 537; 2 Underhill on Wills, section 816; 3 Pomeroy, Equity, section 1022.

True there are decisions to the contrary, but they are by courts holding that the beneficiaries must be as certain as the donees in private trusts. *Dashiel v. Attorney General,* 5 Har. & J. (Md.) 392 (9 Am. Dec. 572); *Beall v. Drane,* 25 Ga. 430. See note to *Fifield v. Van Wyck,* 94 Va. 557, 64 Am. St. Rep. 760. In carrying into effect a legacy to an individual, the mode is deemed to be of the substance of the legacy; but, when the legacy is to charity, the court considers the charity as the substance, and, if the mode prescribed shall fail, will provide another rather than allow the purpose to fail. Story, Equity, section 1167; *Heuser v. Harris,* 42 Ill. 425; *Jackson v. Phillips, supra.* Even though no trustee be named in the instrument creating a charitable trust, it will not be allowed to fail because of the want of a trustee to carry out the design of the donor. Under such circumstances authority of the court to appoint is clearly to be implied. *Russell v. Allen,* 107 U. S. 163 (2 Sup. Ct. 327, 27 L. Ed. 397); *Sears v. Chapman,* 158 Mass. 400 (33 N. E. 604, 35 Am. St. Rep. 502); *Howard v. American Peace Society,* 49 Me. 288; *Minot v. Baker,* 147 Mass. 348 (17 N. E. 839, 9 Am. St. Rep. 713); *Attorney General v. Jackson,* 11 Ves. 365.

The more difficult inquiry is whether a trust was created by the will. That this was not done in express language is plain. But this gift was to the poor in a foreign country, and is not the design that the benefaction was to be executed through the executor or another as trustee to be implied from the nature of the gift? An examination of the de-

*Marginal notes: 4. SAME: trustee: appointment by court. — 5. SAME: trust implied.*

cisions construing similar testamentary clauses may throw some light on this inquiry.

In *Moore's Heirs v. Moore's Devisees*, 4 Dana (Ky.) 354 (29 Am. Dec. 417) the will provided that, in event of the death of the testator's son before attaining majority, the estate be "converted into a fund for educating some poor orphans of this county (Harrison) to be selected by the county court, who are the guardians of such, and to be confined to such as are not able to educate themselves. That it may do as much good that way as it can, I desire the funds shall be taken and loaned out at interest, so as to be rendered a perpetual fund, and the interest only to be applied on their tuition—thereby affording a partial good to as many orphans as the scanty pittance will allow." In sustaining the bequest, the court, speaking through Robertson, C. J., after citing numerous English cases, and especially *Moggridge v. Thackwell*, 7 Ves. 75, deduces three conclusions: These concur in establishing:

(1) That when the charity is not given to trustees, and no particular object is designated, nor any person appointed to select the object, the king, as *parens patriae*, appoints the object; under his sign manual, and the chancellor, as keeper of the great seal, directs the application, by the Attorney General to the crown, to make the appointment. In this class of cases the chancellor does not act judicially as a court of equity. (2) When the donor refers to a future selection of the object by himself, and dies without making any selection, or when trustees, appointed for that purpose, die without acting, or when the fund is superfluous, the chancellor not only will appoint the charity, but will apply it according to a scheme to be submitted by the master in chancery. (3) When an ascertainable object is designated by the donor, in general or collective terms, as the poor of a given county or parish, or when a person is appointed by him to select a described portion, or kind or number from a designated class, the chancellor, sitting as judge in equity, will interpose on the ground of trust.

And concerning these the court proceeds:

In the two first classes, unless the donor manifest an intention to restrict his bounty to some general object of charity embraced by the statute, the legacy or gift will be void, and neither the king nor the chancellor can make any application of it. In the third class, if there be an available trust according to the common law, it is not material whether there be a charity within the statute; but if there be no trust that would be good at common law, and the object of the bounty be collective, and consequently indefinite and incapable of taking without the aid of the common statute—as, for example, a described class of unincorporated persons, as the mechanics of a particular place, the members of a specified church, or the poor of a designated town, or parish, or county—then, unless the selected object be such as the statute recognizes as charity, the common law, and not the statute, applies, and the legacy or gift will, of course, be deemed void: but if the object be a charity, according to the statute, the gift or legacy will be deemed valid, and may be upheld or enforced by a court of equity, as an implied trust, made good and effectual by the operation of the statute.

The bequest was held to be one of the third class, and, after pointing out that the others called for the exercise of prerogative powers not possessed by the courts of this country, it was said that:

Whenever the only objection to a devise or legacy is that it is for the benefit of a class of private individuals, described collectively by some characteristic trait by which they may be identified, if the donation be a charity within the statute, and is therefore valid, it is, as a matter of course, as good and available as it would have been at common law, had it been to a competent person, in trust for another similar person, identified in the will by his proper name; and consequently whoever may hold the legal title— if it did not pass by the will—will hold it in trust for the collective body to whose use it was dedicated by the testator. This seems to be an undeniable proposition; and, if it be so, what objection can there be to the jurisdiction

of a court of equity over it, as over any other valid and enforceable trust? Its being a charity according to the constructive operation of the statute can not be material except for the purpose of determining whether it is valid, and it will be a statutory charity, or void, as it must be according to the common law, and the only law of the case, if it be not such a charity. If it be valid under the statute, then it will be just as available and just as judicially determinable as it would have been had it been a good trust according to the principles of the common law.

In *State v. Gerard,* 37 N. C. 210, certain lands were devised unto Benjamin Simon for life, and thereafter "to the poor of the county of Beaufort, on the express following conditions and no other; that is to say, that they shall never be sold, but be held as a stock belonging to the said poor, subject to be rented, cultivated or leased, as the wardens or managers of the poor may deem most advisable, but never to be let for a longer term of time than seven years." The devise was held not to be to the wardens or trustees, but to the poor of the county to be made beneficent under the care of the wardens, that, as the poor had no capacity to take title to it, it descended to the heirs for them, and the court held that, the purpose being à definite charity, the chancery court would establish the charity and enter the necessary decrees for its execution, upon the principles of English jurisprudence taken from the civil law that charitable dispositions were not "permitted to fail, because of want of trustees, and, in analogy to the rule in equity in other cases, the person on whom the legal estate devolved was declared in equity a trustee *pro hac vice.*"

In *Heuser v. Harris,* 42 Ill. 435, one-half of the testator's estate was left "to the school district in which the farm lays and shall be under control of one person elected by the people of the district, and he shall be elected for four years at one time and be required to give security for the faithful trust put in his hands, and no one shall

receive any percent for their trouble. It shall be loaned out, and none of it shall be used except the interest, and it for no other purpose than for schooling the children, and the other half shall go to the support of the poor of Madison County, but none of it shall be used but the interest." In a learned opinion by Breese, J., the court sustained both bequests, the first for that the object was sufficiently definite and the trust to be executed through a trustee, and the last on the theory that by "poor of Madison County" were meant those who were dependent on public charity (paupers), and that, as these were under the care and supervision of the county court, it might administer the fund as trustee. The ground of the decision seems to have been that, as the county was charged with the support of paupers, and this was administered through the county court in some counties and the board of supervisors in others, the reference to the poor of the county was intended in a technical sense, and, as the law designated the guardian of the poor, the design of the testator must have been that the bounty be administered through the officers charged with such duty. See, also, *Prickett v. People,* 88 Ill. 115.

In *Howard v. American Peace Society,* 49 Me. 288, the clause construed was a bequest "unto the suffering poor of the town of Auburn one-half of the remainder of my personal estate," and the court construed the clause as creating a trust by implication and held, that the court had authority to name a trustee, and concluded as to the beneficiaries that: "It is very manifest that some designation of individuals must be made. If this is not to be done by the executor, it must be by a person appointed a trustee, to execute the trust. In looking at the whole will, and to the evidence in the case, it can not be doubted that the testator had confidence in the ability, judgment and discretion of his executor. If it should be found that it would be proper, in the opinion of the executor, for the reasons

before stated, that this donation should be passed at once to the suffering poor of the town of Auburn, he might, with propriety, discharge his duty by the distribution of the whole sum. If otherwise, he might make the invest-ment and distribute the income and, perhaps, a portion of the principal, till the aggregate should reach the whole, as circumstances might require; and we are of the opinion that the testator intended that his executor should execute this trust."

In *Urmey's Executor v. Wooden*, 1 Ohio St. 160 (59 Am. Dec. 615) the remainder was given "to the poor and needy, fatherless, etc., of Jefferson and Madison town-ships," and the bequest was sustained apparently on the theory that a trust was to be implied from the language employed in connection with the statute of charitable uses. See, also, *County of Lawrence v. Leonard*, 83 Pa. 206; *Sears v. Chapman*, 158 Mass. 400 (33 N. E. 604, 35 Am. St. Rep. 502.) A bequest to the poor inhabitants of St. Leonards was sustained as an equitable trust by the Master of the Rolls in *Attorney General v. Clark*, 1 Amb. 422.

The statute of charitable uses known as St. 43 Eliza-beth, though an amendment to the common law of England when enacted, is, in so far as consistent with our institu-tions, a part of the common law of this State. *Coning v. Emery*, 16 Pick. (Mass.) 107; *Doyle v. Andis*, 127 Iowa, 36. And though but for it there might be doubt as to this bequest creating a trust, these decisions seem to have put a construction thereon in harmony with what was said in *Moore's Heirs v. Moore's Devisees, supra*, i. e., that, when the object designated by the donor of the charity is the poor of a given county, parish, or other definite locality, "the chancellor, sitting as a judge in equity, will interpose on the ground of trust." A reading of that famous act may leave some doubt as to this being within its language, but, as seen, such has been the construction given it in

the English courts as well as those of this country, and, as
a commendable purpose of the testator will be effectuated
thereby, we are not inclined to reject such construction.
In Wisconsin a different conclusion has been reached.   In
*Estate v. Heffen,* 70 Wis. 522 (36 N. W. 407) the be-
quest was "to the Salesianum, near the City of Milwaukee
in the State of Wisconsin, and the poor of the city of
Green Bay in the State aforesaid, to be equally divided be-
tween the said two legatees," and it was construed to be
a gift direct to the poor of the named city as donees, and,
as these were not identified, the clause was declared void;
the court pointing out the difficulties in ascertaining who
were intended.   The decision appears to have been influ-
enced by a line of cases in that State apparently exacting
as great certainty in a charitable as in a private trust.
See *Ruth v. Oberbrunner,* 40 Wis. 238; *Heiss v. Murphy,*
40 Wis. 276.   These cases were explained by Ryan, C. J.,
as not being inconsistent with his opinion in *Dodge v.
Williams,* 46 Wis. 70, 100 (1 N. W. 92, 50 N. W. 1103),
and in *Harrington v. Pier,* 105 Wis. 485 (82 N. W. 345,
50 L. R. A. 307, 76 Am. St. Rep. 924, 942), Marshall,
J., in a lengthy review of the decisions of that State,
reached the conclusion that notwithstanding them and
*Fuller's Will,* 75 Wis. 431 (44 N. W. 304), the test of
definiteness of charitable trusts in Wisconsin is not the
same as that of a private nature.   Though *Estate of
Heffen, supra,* is referred to as holding that the uncertain-
ty which was declared fatal was of donees and not bene-
ficiaries as such, the decision was not approved.   No con-
sideration appears to have been given therein to the char-
acter of the gift or the design of the testator or to the in-
fluence of the statute of charitable uses in ascertaining
whether a trust should be implied.   To say that only those
within the class designated at the very moment of testator's
death were intended applied a limitation not sanctioned by
the language employed.   Manifestly the bounty was in-

tended for the poor whên distributed "for ye have the poor always with you." The term is used in such an instrument in a generic sense and has reference to those in the condition described as a continuing but ever changing body. The individuals are to be ascertained by the executor or trustee designated by the court to execute the trust to be implied from the very nature of the gift.

According to the pleading, there can be little or no doubt as to who the testator in this case designed should enjoy his bounty. The answer averred, and it is to be taken as true on demurrer, that Voorst is a municipal corporation of the Netherlands, and by the poor of that place are meant all who are supported by its institutions of charity, and under the laws there such a bequest is to be distributed among such institutions, according to the number of persons supported by each. Though the bequest is to be construed according to the laws of this State, it is to be executed in a foreign country, and the testator, in directing that his bounty be bestowed on "the poor of Voorst," may well be assumed to have accorded to this expression the meaning it has in that place as identifying the beneficiaries intended.

*7. SAME: intent of testator.*

The district court erred in declaring the bequest invalid, and its judgment is *reversed*.